**MISSOURI, K. & T. RY. CO. OF TEXAS v. LOVELL. (No. 8227.)**

(Court of Civil Appeals of Texas. Ft. Worth. June 19, 1915. On Appellee's Motion for Rehearing, June 26, 1920.)

Railroads ⬦446(6)—Negligence in permitting gap in fence as proximate cause of death of horse on bridge held for jury.

Question of whether railroad's negligence in permitting gap in its right of way fence was the proximate cause of the death of a horse, which strayed onto the right of way and became caught in a bridge, on recrossing bridge after having been frightened thereon by passing train, *held* for the jury (conforming to opinion of Supreme Court, 221 S. W. 929).

Appeal from Clay County Court; W. T. Allen, Judge.

Action by G. W. Lovell against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Questions certified to Supreme Court (221 S. W. 929). Affirmed in conformity to opinion of the Supreme Court.

See, also, 179 S. W. 1111.

Arnold & Taylor, of Henrietta, and C. C. Huff, of Dallas, for appellant.

Wantland & Parrish, of Henrietta, for appellee.

BUCK, J. Appellee, as plaintiff, filed this suit in the county court of Clay county, alleging damages for the killing by defendant railway company of one brown mare of the alleged value of $150, and injury to four other horses in the sum of $20 each. He alleged that on or about the 22d day of August, 1914, these horses got out of the inclosure without his fault, and got on defendant's right of way, and became frightened at a passing train over defendant's railway, and that the unusual, violent, and negligent blowing of the whistle and sounding of the bell caused three of the animals to run into and through and over a fence extending from defendant's right of way to a certain culvert or bridge therein, and which were thereby cut, bruised, and injured in the sum of $20 each; and that one of said horses was thereby caused to enter upon the said culvert or bridge, and was thereby scratched, bruised, and injured, to its damage in the sum of $20; and that one brown mare was caused to go upon said culvert or bridge, and get caught therein between the openings between the cross-ties, and was so seriously injured that the defendant's employés killed her.

No complaint is made of the judgment for $330, except as to the item of $150 for the mare killed. The defendant pleaded in the court below, and here urges, that because said animal was not struck by any locomotive or car belonging to the defendant, and said injury and damage was not the result of, or caused by, any locomotive or car striking the animal, but that said injury and damage was caused solely by said animal going onto said bridge and falling between the cross-ties thereof, that the defendant is not in law liable therefor.

The evidence showed that at the place where the accident occurred the right of way runs east and west, and is crossed by a third-

class public road running north and south; that the right of way is fenced, and that on the north side of the intersection of the right of way and the public road the railway company had theretofore kept and maintained a wire gap or gate, but that this gate was down at the time the horses entered the right of way from the north, and was out of repair, and had been for some time previous thereto; that on the south side of the right of way there was another gate which was closed; that a short distance from the intersection of the road with the right of way eastward there was a bridge or culvert some 25 or 50 feet long, extending over a creek, and that from each end of the culvert, and on both the north and south sides thereof, there was a fence extending in an oblique direction to the right of way fence; that the culvert was from 10 to 15 feet from the ground, or the bottom of the creek.

John Choate testified:

"I was about one thousand yards from the crossing when the east-bound local train came along going towards Denison. My attention was attracted by the loud whistling of the train. I looked down toward the train, and saw the train, after it had passed the crossing, going toward the east, and it was right behind the horses, whistling as loud and as fast as it could, and was shooting out steam; that was blowing right out behind the horses. It ran some of the horses through the right of way fence that leads up to the culvert and clear on beyond east of the culvert; and three of the horses ran through the right of way fence over into the place owned by Mr. Bear, and three of them ran into the right of way fence west of the culvert, and turned back down inside of the right of way. In this way three of the horses were left in the right of way and three of them in Mr. Bear's pasture, and the only way that the three in the right of way could get back to where they came from, or to where the others were, was for them to either go through the right of way fence or to follow the right of way fence onto the culvert and go over the culvert."

Henry Sebert testified in the main as did the last-named witness as to how the horses got through the fence or fences, except that he testified that, after the east-bound train had passed, the three horses which had got by the culvert and were still in the right of way turned back, and that—

"between the time the west-bound passenger came and the east-bound passenger came, I saw the other horses, two of them in the right of way, and three of them in Mr. Bear's pasture or field. They were all cut up pretty badly. I don't know how this mare got onto the trestle, as I did not see her go there. * * * My judgment is that the train could not have passed over her and left her in that condition. The only way that the three horses that I saw on the east side of the culvert could have gotten back to where they came from or to where the other horses were would have been to go

223 S.W.—65

over that culvert or through the right of way fence."

From this testimony it would appear that one east-bound train passed before and one after the west-bound train.

C. C. Harbison, section foreman, testified for the defendant:

"Our crew killed the mare after she had been dropped from the bridge. I saw the mare at the time she went onto the trestle. I was a good ways off, but at the time she went over the trestle the train was not there. She fell through the trestle without the train striking her, and no train struck her at all. When she went onto the trestle she was going back from where she had come; back to where the other horses were. The only way she had to get back was to go over the trestle or through the right of way fence."

It will be seen from the evidence quoted, which is supported by other evidence in the case, that, so far as the mare that was killed is concerned, the injury to her, which resulted in her death, was caused by an attempt on her part to walk the trestle in an effort to get back to the west side thereof, and that in doing so she fell through and was so badly injured that she had to be killed. It is evident from the testimony in the case, and we so find, that she was not killed by coming in contact with a locomotive or train of defendant railway, and therefore there is not shown a prima facie case of liability on the part of the railway, as provided in article 6603, Vernon's Sayles' Tex. Civ. Stat., which reads as follows:

"Each and every railroad company shall be liable to the owner for the value of all stock killed or injured by the locomotive and cars of such railroad company in running over their respective railways, which may be recovered by suit before any court having competent jurisdiction of the amount. Such liability shall also exist in counties and subdivisions of counties which adopt the stock law prohibiting the running at large of horses, mules, jacks, jennets and cattle; provided, however, that in all cases, if the railroad company fence its road, it shall only be liable for injury resulting from a want of ordinary care."

The record is silent in this case as to whether or not the stock law prohibiting horses and other animals from running at large was in force in Clay county at the time of the accident. Therefore we are justified in concluding that it was not. But it is provided in the article of the statute above quoted that, "if the railroad company fence its road, it shall only be liable for injury resulting from a want of ordinary care." It is not contended by appellee that the defendant company is liable absolutely for the injury complained of, or that his action is predicated upon this article. It is urged that, if the railroad company failed to exercise ordinary care to prevent injury to

the mare in question, it would be liable under the common law; and he cites, among other cases, the case of Ry. Co. v. Dixon, 109 S. W. 978, 49 Tex. Civ. App. 506, which holds, in effect, that where a railroad company erects a fence along its tracks, it owes to the adjacent owners the duty to exercise ordinary care to keep the fence in proper condition, and that where it fails so to keep its fence, and horses, escaping, get onto the track and are frightened by a train, and run onto a bridge and are injured by falling through the bridge, the negligence in not keeping the fence repaired is the proximate cause of the injury, and that the railroad company is liable therefor. It is further held in that case that, where a railroad company fences its right of way, it assumes the duty of keeping it in 'proper condition and repair, and that the gate into the right of way may be treated as a part of the right of way fence. This latter holding is limited to cases where, as in this case, it is not shown that the gate was installed for the benefit of the adjacent landowner.

It is held in Ry. Co. v. Hughes, 68 Tex. 290, 4 S. W. 492, and other cases construing article 4528, Revised Statutes of 1895, which in the main contains the provisions now in article 6603, supra, that, while no absolute liability results when the right of way is not fenced, unless there is a physical contact of the moving engine, or a part of the train, with the animal killed or injured, yet that a liability might arise on account of negligence, although there is no contact of the animal with the moving train. The opinion in Railway Co. v. Dixon goes on to say:

"The railway company has seen fit to fence its right of way, and if by its negligence it has permitted the fence to become defective, and stock to wander upon the track, it presents a case in which it is not the absence of the fence that makes it liable, but a case in which its negligence was the proximate cause of injury. When the track is not fenced, animals upon it or near it have the means of escape from injury which does not exist when the track is fenced on both sides; and, when such is the case, animals, permitted to enter upon the right of way and track between the two fences, are more exposed to danger and more liable to sustain injury than would be the case if they were not confined to the narrow limits of the right of way."

But can we say that in the instant case the plaintiff has alleged such negligence as would make the railway company liable, and, if so, does the evidence sustain such allegations? Plaintiff alleged negligence of the defendant in the following language:

"That there is no fence, cattle guard, or obstruction to prevent stock from passing over said dirt road going south and on said right of way from the north, nor from going upon defendant's said right of way and railroad track, both easterly and westerly, and in fact upon reaching said right of way over said dirt road from the north, such stock could find no outlet, except upon and over said right of way or to return north over said road, and plaintiff says that the failure to have a fence or cattle guard or obstruction from the intersection of said dirt road fences with defendant's right of way fences on the north side of said right of way to the defendant's railroad, and proper cattle guards, is negligence on the part of defendant; and that by leaving the matter in the condition it is now and was in at the date of the injury herein complained of, without such fence, cattle guards, or obstruction, formed and created a 'trap' or 'pocket' to catch or ensnare stock onto said right of way, and between the said railroad track proper and the wire fences of defendant on the north and south side thereof, all of which plaintiff says is negligence, and the proximate cause of plaintiff's stock getting upon said right of way, and being killed and injured as further alleged herein."

In subsequent paragraphs plaintiff alleges the construction of the fences at either extremity of the trestle or bridge or culvert, connecting with the right of way fences at either end and on both sides, and alleges that such construction constitutes a "pocket or trap" for stock which have come on the right of way through said open gate, or because of the absence of the gate. He further alleges negligence in the construction of the trestle in that the ties are so placed that they permit the hoofs and limbs of horses and cattle to slip or pass between them.

We find nothing in the record to suggest that the trestle in question was negligently constructed, or constructed differently from those commonly used. If the death of the mare in question had been caused at the time of the passing of the east-bound train, and when three of the horses got over into the field north, and three others, including the mare in question, either got through both of the fences on the north side of the trestle and joining the ends of the trestle with the right of way fence, or passed over the trestle itself, and the witnesses seem to leave the matter in doubt as to which means was employed, we would feel justified in sustaining the judgment as to the $150 item, and to hold that the act of the railway company, and those in charge of its engine, in causing the engine to whistle, blow off vast quantities of steam, and the ringing of the bell, thereby frightening the animals and causing them to run through the fences and onto the trestle, was the proximate cause of the injuries; but the damage complained of as to this particular item does not seem, at least to the majority of the court, could have been reasonably anticipated. It appears that the mare which was killed, as well as two others of the horses, at the time the horses were frightened at the approach of the east-bound train, and caused to run eastward from the intersection

of the public road and the right of way, and down the right of way north of the track, managed, either by going through the fences connecting the ends of the trestle with the right of way fence, or over the trestle, to escape the danger from the approaching train, and after the passing of the train, turned back westward, and that the mare in question, in attempting to go back westward over the trestle, fell through the interstices between the ties and received the injuries necessitating her being killed. In the judgment of the majority, this accident and injury was not such as resulted in direct sequence from any negligence of the railway company alleged by plaintiff, but was due to an independent and nonconcurring cause, to wit, the unusual and not to be anticipated notion that the mare took to undertake such a hazardous feat. Moreover, the majority are not satisfied that the evidence is sufficient to show notice to the defendant of the condition of the north gate.

Therefore, in the judgment of the majority, the railway company in no event could be liable for the value of the animal killed. The judgment of the trial court is reformed so as to exclude the item of $150, and, as thus reformed, is affirmed in the sum of $80, with interest at 6 per cent. from date of judgment. The costs of this appeal are adjudged against appellee.

Reformed and affirmed.

BUCK, J. (dissenting). I cannot agree with the views expressed in the majority opinion nor in the disposition of this case. If the railway company is liable for the injuries sustained by the horses which ran through the fences to escape from what, no doubt, seemed to them an approaching monster, emitting loud and frightening noises and belching forth clouds of smoke and steam, then it seems to me that no less is it liable for the death of the mare in question, which, having escaped from the threatening and imminent danger as she saw it, followed the natural promptings of her equine nature to get back to her companions by the only means of egress that presented itself. To one who knows horses and understands their habits, it would seem that under the circumstances it must have been reasonably anticipated that in all probability she would have attempted to do the very thing she did do, not realizing the danger from the gaps in the walkway selected until after she started onto the trestle and it was too late to turn back. I believe the accident in question is a result which naturally flows in a continuous sequence from the negligence of the railway company in permitting its gate or gap into its right of way to be down or get out of repair, or in failing to have fences and cattle guards on either side of the intersecting public road, thereby inviting loose stock to enter upon such right of way. The case of Ry. Co. v. Dixon, cited in the majority opinion, is believed to be directly in point, and to support the judgment of the trial court as to this item of damage. Appellee also cites Ry. Co. v. Benaist, 122 S. W. 587; Ry. Co. v. Harris, 3 Willson, Civ. Cas. Ct. App. § 224; Ry. Co. v. Mitchell, 4 Willson, Civ. Cas. Ct. App. § 261, 17 S. W. 1079; Ry. Co. v. Cooper, 32 Tex. Civ. App. 593, 75 S. W. 329—all of which in more or less degree upon the point in issue support the Dixon Case. In the last-cited case by this court Judge Speer says:

"The evidence shows that the animal was killed in the appellant's station grounds in the town of Miami, and at a place where it is not required by law to fence its right of way. Ry. Co. v. Blankenbeckler, 35 S. W. 331, and authorities there cited. In such case it is incumbent upon the plaintiff to prove more than the mere killing; he must prove that it was negligently done. But this does not mean negligence of the train operatives alone, for any negligence of the defendant proximately causing the injury will suffice to establish liability. In this case the testimony tended to show negligence in the construction and maintenance of some stock pens and wing fences, forming what the witnesses denominate a 'pocket,' that was dangerous to stock, and which was the occasion of appellee's mule being caught on the track and killed. Negligence in this respect might be sufficient to show liability."

It is my opinion that the judgment of the trial court should be in all respects affirmed.

### On Appellee's Motion for Rehearing.

This cause has been held pending the answer of the Supreme Court to a certified question presented to it December 4, 1915. In answer to the question propounded to that court, the following is said by Chief Justice Phillips:

"The effect of the negligence of the defendant with respect to the condition of its fence was to place the animals within a narrow inclosure, from which, on becoming frightened because of its further negligence in sounding the whistle and bell and blowing off steam from the engine, they would naturally seek egress, in a manner not necessarily careful of their own safety and probably in disregard of it. There was warrant, therefore, for a jury's concluding that the negligence of the defendant was responsible for the mare's getting to a place on the right of way beyond the bridge, separated from the other horses and away from the place to which she was accustomed. A jury could have reasonably concluded, in other words, that because of the negligence of the defendant the mare was placed in a position of possible danger if she attempted to recross the bridge.

"The test of the question is, what would have been reasonably anticipated as the action of the mare in that situation? It could not have been reasonably expected that she would certainly remain where she was, or continue

down the right of way from the bridge. The more probable anticipation would have been that she would do exactly as she did—attempt by recrossing the bridge either to rejoin the other horses, or return to the habitual place from which she had first strayed, and then been driven away through her fright.

"That was a natural thing for a horse in her predicament to do, and might, therefore, have been reasonably foreseen by the servants of the defendant to whose negligence her situation was due. The question was one of fact." 221 S. W. 929.

Hence the former judgment of the majority is set aside, and the judgment of the trial court is in all things affirmed, with costs of the appeal taxed against appellants.