ST. MARY'S ORPHAN ASYLUM OF TEXAS ET AL. v. B. T. MASTERSON ET AL.

Decided November 24, 1909.

**1.—Will—Probate—Limitation—Statute Construed.**

Under the provisions of article 1881, Rev. Stats. a purchaser from a devisee is entitled to have the will probated when the same constitutes an essential link in his chain of title; such right in the purchaser is not dependent on the existence of the same right in the devisee; the latter may have lost his right by his default in presenting the will for probate within the four years prescribed by the statute, while the purchaser may at the same time have the right because of his want of knowledge of the existence of the will. The purchaser is not necessarily chargeable with the laches or default of the devisee.

**2.—Same—"Default"—Purchase from Devisee.**

A purchaser of land many years after the death of the ancestor from one who represented that he acquired the land as an heir and not as a devisee, and who, together with the surviving wife and other children, had held and dealt with the property for twenty-one years in the same proportions as they would have held and claimed under the statute of descent and distribution, should be held not guilty of laches or "default" in presenting the will for probate when he does so promptly after learning that a will in fact existed.

**3.—Same—Right to Probate.**

When a will is an essential link in a chain of title to land, the owner of the land is entitled to a judgment of probate; and an offer of release by those claiming adversely under the will is not a substitute for such judgment and can not deprive him of his right thereto.

**4.—Same—Default.**

It is the policy of the law to enforce the timely probate of wills, and one who has the custody of a will and refrains for the statutory period from pre-

senting it for probate, for personal considerations or because he believes his title to be safe without it, is in default within the meaning of the statute.

### 5.—Will—Revocation—Subsequent Will—Evidence.

In determining which of two wills executed by the same testator on the same day, was executed last, extrinsic evidence should not be considered when intrinsic evidence exists.

### 6.—Same—Intrinsic Evidence.

Each of two wills executed by the same testator on the same day contained a revoking clause; the clause in one was "Hereby revoking all others which I may have heretofore made;" the clause in the other was "Hereby revoking all other wills that I have heretofore made." Held, the phraseology of the clause last quoted indicated that the will in which it was used, was the will last executed.

### 7.—Same.

Each of two wills executed by the same testator on the same day named the surviving wife as one of the executors, but in one will two other executors were named, and in the other three other executors were named; both wills contained a provision that the "wife and any two of the other executors" should have power to make sales of property. Held to indicate that the will appointing the wife and three other executors was executed last.

### 8.—Same—Probate—Sufficient Evidence.

Evidence considered and held sufficient to require the probate of a will although offered for probate twenty-one years after death of the testator.

#### ON MOTION FOR REHEARING.

### 9.—Same—Adoption—Record—Notice.

While the record of an act of adoption may be constructive notice to all persons, it is not such notice as will necessarily charge one interested in the probate of a will in which the adopted· child would also have an interest, with such default as will preclude him from having the will probated after the lapse of four years from the death of the' testator. The want of actual notice is a factor to be considered in such case.

### 10.—Will—Repudiation.

A testator declared in his will that the property disposed of by him therein was his separate property, and devised to his wife one-fifth of the same; the property was in fact community property, and the children knowing such to be the case gave their mother one-half of the property. Held, the act of the wife in accepting one-half the property was not necessarily a renunciation of the will.

### 11.—Will—Application to Probate— Motive.

If a party has a legal right to have a will probated, the motives which actuate him are immaterial.

Appeal from the District Court of Galveston County, Fifty-sixth Judicial District. Tried below before Hon. Robt. G. Street.

*Harris & Harris* and *P. A. Drouilhet,* for appellants.—Each appellant having shown by proof that such appellant was not in default in failing to present the will or wills for probate within four years next succeeding the death of the testator, either or both should have been admitted to probate on the application of each appellant. Rev. Stats., art. 1881; Moran v. Wheeler, 87 Texas, 184; Ochoa v. Miller, 59 Texas, 460; Ryan v. Texas & P. Ry. Co., 64 Texas, 239; Elwell v.

Universalist Gen. Conv., 76 Texas, 514; Phelps v. Ashton, 30 Texas, 347; 19 Am. & Eng. Ency. of Law, 2d ed., p. 283; Schouler, Executors and Administrators, par. 56; Steadman v. Steadman, 55 S. E., 784; Hanley v. Krawtczyk, 119 Wis., 352, 96 N. E., 820.

In determining the question of default the court may and should take into consideration the motives that actuated one, having the power to produce the will, to withhold it, and the court should also take into consideration all the circumstances surrounding him. Henry v. Roe, 83 Texas, 446; Nelson v. Bridge, 98 Texas, 523; Ochoa v. Miller, 59 Texas, 462; Ryan v. Texas & P. Ry. Co., 64 Texas, 239.

The minor, Frederick K. Fisher, and his guardian, F. K. Fisher, never having had control of the will, and never having had the same in their custody, and said minor not knowing of the existence of the said will or wills until a few months prior to the filing of his application for its probate, said minor can not be held to be in default in not making earlier application for its probate. Henry v. Roe, 83 Texas, 446.

When the words used in a statute clearly express the will of the Legislature, courts are not at liberty to give a construction changing the meaning and thus defeating the will of the law-making department. U. S. Constitution, art. XIV, sec. 1; Rev. Stats., art. 1881; Thompson v. Buckley, 1 Texas, 35; Read v. Levy, 30 Texas, 738; Engelking v. Von Wamel, 26 Texas, 741; Perez v. Perez, 59 Texas, 324; Dodson v. Bunton, 81 Texas, 658.

One claiming as a purchaser from the devisees under a will is a party in interest, and has the right to apply for and secure the probate of the will.

The titles of Hefley and the asylum being defective from the fact that their chains of title failed to show how the property passed from John W. Harris, deceased, to the grantors of Hefley and the asylum, the deeds from the devisees of Mrs. Annie W. Masterson did not cure this defect, nor did it supply the missing links in the said chains of title.

These appellants, as warrantors of the titles of the asylum and Hefley, have the right to apply for the probate of the will as muniments of title of the said asylum and Hefley. Art. 1881, Rev. Stats.; Guffey Petroleum Co. v. Hooks, 47 Texas Civ. App., 560; Warvelle on Abstracts, p. 369; Ryan v. Texas & P. Ry. Co., 64 Texas, 239; Ochoa v. Miller, 59 Texas, 460; Elwell v. Universalist Gen. Conv., 76 Texas, 514.

Where, from the reading of two wills, each complete in itself and both executed the same day, one of them contains intrinsic evidence of having been executed last, and where, from extrinsic evidence, it is shown that that will was surrounded by the testator with all the care and solemnity incident to the preservation of such a document, which evidence is totally lacking as to the other one, it is a presumption of law that the will which is shown by intrinsic and extrinsic evidence to have been the last will of the deceased, is so in fact. Sec. 15, art. 5, Const. Texas; Odenwaelder v. Schorr, 8 Mo. App., 458; Forman's Will, 54 Barbour, 284; Crossman v. Crossman, 95 N. Y., 145; Underhill on Wills, p. 351; Beach, The Law of Wills, pars. 61, 108; Jarman

on Wills, 6th ed., star pages 135, 137, 138; Schouler, Executors and Administrators, par. 85; 30 Ency. Law, 2d ed., pp. 623, 624, 625, 627; 3 Redfield on Wills, pp. 50, 51, pars. 22-24, note 35.

*D. D. McDonald* and *Masterson & Masterson,* for appellees.—No will should be admitted to probate after the lapse of four years from the death of the testator, unless it be shown by proof that the party applying for such probate was not in default in failing to present the same for probate within four years aforesaid. John W. Harris, Cora L. Harris and Frederick K. Fisher, holding the interest of his mother, Lillie B. Fisher, did not show by proof that they were not in default in failing to present the same for probate within four years, but, on the contrary, the agreed facts printed and relied on in the briefs of both parties, and the findings of fact by the court, and the testimony in the case show that they were in default within the terms and meaning of the statute, and barred from presenting the will or wills for probate after four years. Rev. Stats., art. 1881.

Before admitting a will to probate it must be proved to the satisfaction of the court that the testator executed the will with the formalities and solemnities and under the circumstances required by law to make it a valid will, and that such will has not been revoked by the testator. There was no error in the court refusing to probate either X or Y, or both X and Y, as the will or wills of John W. Harris, because the facts above required were not proved to the satisfaction of the court. Rev. Stats., art. 1904.

The agreement made by all parties interested in both of said papers X and Y tendered for probate as the will of John W. Harris, that neither of said papers X or Y would be probated, and that the parties entitled would take the estate as of a person dying intestate, and the carrying out of the agreement through a long term of years, appropriating and using the assets of the estate under it until three of the parties to the agreement are dead, was a valid and binding agreement, and was a practical repudiation of the two alleged wills, and the court properly refused to probate either or both of said papers on the application of parties seeking to violate their said agreement. Stringfellow v. Early, 15 Texas Civ. App., 597; Phillips v. Phillips, 8 Watts, 197; Foote v. Foote, 61 Mich., 181; Darden v. Harrill, 78 Tenn., 421; Etheridge v. Corprew, 48 N. C., 14.

The parties interested in the estate of John W. Harris and in both of said alleged wills having for twenty-one years given a practical interpretation of their rights to the estate of John W. Harris, and used a large part of the estate under it, this practical construction of their rights will be adopted by the court as far as the parties acting are concerned. Heidenheimer v. Cleveland, 17 S. W., 524; Chicago v. Sheldon, 19 Wall., 54; Topliff v. Topliff, 122 U. S., 131; District of Columbia v. Gallaher, 124 U. S., 510.

Frederick Kenner Fisher has no interest in the estate, either as heir or devisee, except through his mother. He was not a devisee under either X or Y. He was not an heir-at-law of John W. Harris and was not born when Mr. Harris died. He is heir-at-law of his mother, and in the right derived through his mother, claims her share in the estate

of John W. Harris. He takes her right just as she left it, subject to the same objections as if she was presenting the claim.

No one but the testamentary executor or a person interested in the estate of the testator can apply to probate a will. Neither the St. Mary's Orphan Asylum nor Hefley were interested in the estate of John W. Harris, and neither had any right to have the alleged wills probated. Art. 1895, Rev. Stats.; Ransofe v. Bearden, 50 Texas, 127.

JAMES, CHIEF JUSTICE.—This appeal is from a judgment of the District Court refusing to probate a will, or wills, as the will of Jno. W. Harris.

The following facts were undisputed: John W. Harris died in April, 1887, leaving his wife, Annie P. Harris, and his children, John W. Harris, Jr., Rebecca P. Harris, Lillie B. Harris, Cora L. Harris, and also an adopted child, Annie W. Dallam, who was a child of Mrs. Annie P. Harris by a former marriage.

Annie W. Dallam, who became the wife of Branch T. Masterson, died in 1900. Rebecca died, single and intestate, in 1900. Lillie married Walter Fisher in July, 1887, and, with her husband, died in 1900, leaving a minor son, Frederick Kenner Fisher. The daughter, Cora, became Mrs. Wharton Davenport in January, 1889. The widow, Annie P. Harris, died in October, 1906.

The two papers propounded as wills of Jno. W. Harris purport to have been executed by him on the same day, July 10, 1880. The existence of these instruments appears to have become known to the widow and children of Mr. Harris immediately after his death, but no step was ever taken to probate them or either of them until this proceeding was brought in the County Court for that purpose by the Orphan Asylum in January, 1908, about twenty-one years afterwards. The circumstances which led to the application to probate the will are substantially as follows:

At that time, and until April 26, 1906, it was unknown to any one that Jno. W. Harris had in 1852, in Matagorda County, duly adopted Annie W. Dallam, and thereby made her one of his heirs in case of his intestacy. With this fact unknown and undiscovered, the widow and children of Judge Harris being, so far as known or imagined, his only legal heirs and being the only persons mentioned in said instruments as his devisees, concluded, for family reasons and considerations, not to have the will or wills probated. This is reflected by the following finding of the district judge: "It was unanimously agreed by Mrs. Harris and Rebecca P., John W., Jr., Lillie B. and Cora L. Harris that the probate of the papers would seriously reflect on Judge Harris' memory, and they determined they should not be offered for probate, but should be withheld and ignored, and that Mrs. Harris' half interest in all the property should be recognized and the other half divided into four equal shares among themselves. It was not known to any of the parties, or probably to any living person, that Judge Harris had in fact executed the adoption and caused it to be recorded, until Mr. Branch T. Masterson, being in the town of Matagorda about the 26th of April, 1906, discovered it in an examination of the deed records. And on the filing of suit by Mrs. Masterson's

children and devisees, and by the widow of her deceased son, claiming her interest as an adopted child, these proceedings to probate either or both instruments as Judge Harris' will were begun."

Acting further upon the belief that they were the only persons interested in the property, Mrs. Harris and Jno. W. Harris, Jr., and his sisters, dealt with the property as their own, as in case of Judge Harris' intestacy, and have made many sales of lands, warranting the title. The many purchasers from and under them proceeded also in good faith upon that theory. Among these purchasers are the St. Mary's Orphan Asylum of land in Galveston, and W. T. Hefley (who intervened, also asking for the probate of one or both of the wills), a purchaser of certain land in Milam County. The wills have all along remained in the possession of John W. Harris, Jr., who has had exclusive charge of the estate, which remains undivided.

The court found as to Cora Davenport (who was nineteen years of age at the time of her father's death, and not twenty-one when she married, and who became a widow November 24, 1902); and also as to the minor, Frederick Kenner Fisher (whose mother, Lillie Harris, was of age when her father died and who lived until September 8, 1900), on the subject of "default," as follows: "The two wills now offered for probate were wilfully withheld from probate or offer therefor by John W. Harris, Jr., and Cora L. Davenport, for twenty-one years, and by Lillie W. Harris, afterwards Fisher by marriage, through whom Frederick Kenner Fisher claims, from the time of her father's death until she herself died."

The original application to probate was filed in the County Court by the Orphan Asylum on January 25, 1908. It alleged the death of John W. Harris in April, 1887; that he left a written will of date July 10, 1880, a copy of which, the original not being in applicant's possession but believed to be in the possession of the persons named as executors therein, being annexed; and alleged, among other matters, the conveyance to applicant of certain land of the estate, by and under the devisees named in said copy of will, and the necessity of the probate of this paper "to complete, protect and make good of record and in fact applicant's title." As excuse, and to show itself not in default in asking the probate, the application alleged that at the time of its purchase it was informed and believed that Jno. W. Harris had died intestate, and that until about two weeks prior to this application it was ignorant of the fact that he had made a will.

John W. Harris, Jr., brought in and tendered for probate the two instruments, and asked that the will of John W. Harris, whether it be found to consist of one or both instruments, be admitted to probate. His pleading alleged that the reason there had been no tender for probate of such instrument or instruments was, in effect, the family understanding or arrangement and for the reasons above stated, not to do so. Further, he alleged that about eighty persons were occupying the same attitude as the Orphan Asylum as purchasers of property from the widow and children of John W. Harris through warranty deeds and representations of heirship from them, all relying on the intestacy of Jno. W. Harris and apparent heirship of said grantors, and about two hundred and fifty persons occupy the position

of lessees under them, said lessees also so relying. That in January, 1908, a suit for partition was brought by the children of Annie W. Masterson claiming a one-fifth of the estate, involving a claim by the former based in part on said act of adoption and the intestacy of Jno. W. Harris, and that it has now become peculiarly important, in view of the recently discovered adoption, that his will be probated, though twenty-one years have elapsed since the testator's death.

Hefley intervened, alleging his interest in the probate of the will as purchaser, under Mrs. Harris and the children, of certain land, asking for probate.

Answers were also filed in the County Court by Cora Davenport, asking for the probate and alleging that she had not been in default and the circumstances. The guardian of Lillie Fisher's minor son filed a like pleading.

Branch T. Masterson and the devisees of his wife, Annie W. Masterson, opposed the probate.

The County Court probated one of the instruments as the will, it being the one hereinafter referred to as "Will Y." On appeal the district judge denied the right to probate either, stating in his conclusions his reasons substantially as follows:

1st. That it does not appear that Jno. W. Harris, Jr., Cora L. Davenport and the minor Fisher, who was chargeable with the laches of his mother, Lillie Fisher, were not in default in failing to present the will for probate within four years from Judge Harris' death.

2nd. That the Orphan Asylum and Hefley, as to the question of default, stood in no better position than their grantors, the latter having been barred of the right to ask probate when they conveyed the lands to these applicants, and that they were subject to the disability of their grantors. As an additional reason for denying probate at the instance of the Orphan Asylum and Hefley, it appears, as found by the court, that the devisees of Mrs. Masterson had executed or tendered to each of them a special warranty deed to the land respectively claimed by them, which had the effect of perfecting their titles, if it was before defective by reason of the act of adoption, thereby removing any interest they had in the probate of the will.

3rd. A further reason of the trial judge for denying the probate is that even if the applicants, Jno. W. Harris, Jr., Cora Davenport and the minor Fisher had not been in default, each instrument is a complete will in itself independent of the other, and they are inconsistent with each other and not intended to be read together, and because they purport to have been made on the same day and each contains a clause of revocation revoking all former wills and there is no evidence of probative force to show which was the last will.

Under our statute (Sayles Rev. Stats., art. 1881) a will may be admitted to probate as a muniment of title in favor of a devisee or a purchaser under him, provided the applicant has not been in default in failing to present it for probate within four years after the testator's death. (Ochoa v. Miller, 59 Texas, 460; Ryan v. Texas & P. Ry., 64 Texas, 241; Heist v. Universalist Gen. Convention, 76 Texas, 519.) Whatever laches or "default" may be ascribed to the devisees in reference to probating the will in question, is in our opinion not

chargeable to the Orphan Asylum and Hefley, under the evidence here. We start out with the principle established in the above cases, that a purchaser from a devisee is a person entitled to have a will probated when the same constitutes an essential link in his title. The applicants, the Orphan Asylum and Hefley occupy that position. Their right to have it probated is not dependent on the existence of the same right in their grantors, the devisees. The latter may have lost their right by reason of knowledge possessed by them concerning the will, and their vendee may at the same time have the right because of his want of such knowledge. It is to be borne in mind that it is the applicants' "default" that the statute has reference to.

Under the exceptional circumstances of this case, the applicants, the Orphan Asylum and Hefley, have been guilty of no conduct that can be characterized as "default." They became interested in their respective tracts by purchase from the same persons as those named in the will, and who by the laws of descent of the State were to all appearances the very persons who would have taken without a will. When they purchased, Judge Harris had been dead many years, and so far as the public knew, or had reason to know, he had died intestate. His wife and children were the apparent and recognized owners of the property in the capacity of heirs. This condition of things is emphasized by the extensive and uniform transactions by the public with them as heirs. These particular purchasers knew no better when they bought nor until near the date of this proceeding, when there was unearthed a fact which no one had known or suspected, not even those nearest in life to the testator, viz.: the fact that he had at a remote time adopted his stepdaughter.

These applicants are not in the same attitude as the other applicants, for they knew nothing of the existence of the will when they became purchasers. They lawfully and in regular course of dealing came into a position that gave them an interest in the will, and the probate of it was, as it has turned out to be, an essential part of their title. The discovery of the necessity of a will to assure their title, and even the discovery that there was a will, came to them just prior to the commencement of proceedings for probate. As applicants, no act or knowledge of theirs, nothing with which they were connected, and no situation they assumed, can, viewing the matter from the standpoint of a prudent person, be said to place them in default. As we understand, the trial judge was of this opinion, but he refused the applications of these purchasers because they stood in no better position than their grantors whom he expressly found to be in default. We do not concur in this. We think an applicant for the probate of the will must be judged by his own conduct and circumstances in determining whether or not he is in default.

The other reason given by the trial judge for denying the probate on their applications was, that Mrs. Masterson's devisees had given or tendered deeds to them for the lands they were interested in and thereby their titles were perfected. His finding of fact on this subject is: "The devisees of Mrs. Masterson tender both deeds of confirmation, renounce all claim to the lands so sold them and elect to look exclusively to the parties receiving the purchase money, as they

do with respect to all the sales made previous to the discovery of the act of adoption." The court added: "Out of deference to the supposed wish of the parties, not because deemed material, the court also finds the facts as stated in the written agreement of counsel."

The written agreement states: "On or about the 30th day of January, 1908, Evelyn P. Masterson, Thos. W. Masterson, May Masterson Fisher, joined by her husband, Lewis Fisher, Reba B. Masterson and Wilmer D. Masterson executed a special warranty deed to St. Mary's Asylum of Galveston, Texas, conveying all their right, title and interest in all the property described in the application of said Asylum herein, and said deed was by said Asylum declined. Later on, to wit, the 4th day of April, 1908, said deed was by the grantors, without authority of grantee, filed for record in the office of the county clerk of Galveston County, Texas, and is now again tendered by the grantors to the grantee, the said Orphan Asylum, and again by the grantee declined."

Also: "It is further agreed that May M. Fisher, joined by her husband, Lewis Fisher, Thos. W. Masterson, Reba B. Masterson and Wilmer D. Masterson and Evelyn P. Masterson have executed and tendered to W. T. Hefley, intervener, since the filing of his intervention herein, a deed confirming the deed described in his intervention as executed by Jno. W. Harris and others, and expressly disclaiming any right to contest the title of W. T. Hefley to said realty, and looking only to their interest in the proceeds of said sale paid over to John W. Harris, Jr., for the estate of John W. Harris, which deed, so tendered the said Hefley, has been refused."

Our opinion upon this subject is that these applicants had the right to probate the will and supply the missing link in their title by that means, and could not be deprived of that right, especially after they instituted proceedings to probate the will to that end; nor to accept what was offered to them as a substitute or what might be a substitute therefor. It is evident that a judgment of probate supplying the link is more comprehensive and unimpeachable than a deed with restricted warranty, or even one with general warranty, for that matter.

If the above conclusion is sound, the will is to be admitted to probate on said applications regardless of the right of the other applicants to ask it, and it really becomes an immaterial question whether or not these other applicants are in default. The court held them to be in default. They, the devisees, according to the court's finding and according to the evidence, were aware of the existence of the wills all the time, knew where they were, had the custody of them, and voluntarily refrained from tendering them for probate. It is true they perceived no necessity for probating them, they being the devisees therein and, as they believed and as they apparently were, all of the legal heirs, and that this, a mistake of fact, was the underlying cause of their withholding the wills. It is true also that this is what other prudent persons might have done under the same circumstances.

The policy of law, however, is to enforce the timely probate of wills, and we think no one who has custody of a will and refrains for the statutory period from presenting it for probate, for mere personal considerations or under the assumption that his title to property is

safe without it, can be said to be not in default in the meaning of the statute. The statute makes it necessary to probate a will within four years, and a person having custody of such an instrument is charged with knowledge that it must be filed for probate within that time in order to rely on it, whether the necessity for doing so is apparent to him or not. He knows that unexpected events often happen, and that his present conclusions may be wrong, and he knows also that by complying with the requirements of the statute he is afforded a way, and the only way, to foreclose all contingencies, and if he chooses not to resort to it, it amounts to wilful neglect.

There remains the other question, whether or not it can be determined which of these instruments is the last will. We pass over the question of both being capable of constituting and being declared one will. We think they contain intrinsic evidence of the one designated in this record as "Will Y" being the last will. They bear the same date. Extrinsic evidence is not to be consulted where there is intrinsic evidence in such a case, and we, therefore, need not discuss the extrinsic evidence, which according to the briefs of counsel would seem to tend to opposite results.

In both these documents the general form is the same. The one marked "Will X" and the one marked "Will Y" begin with a revoking clause, the former says "hereby revoking all others which I may have heretofore made" and the latter says "hereby revoking all other wills that I have heretofore made." This is significant. It indicates that "X" was made first, because of the probability that if he on the same day had already made "Y," it was made so recently that he would not have used an expression that retired it as one he *may* have theretofore made. On the other hand, the language in will "Y" revokes all wills theretofore made, an expression he was likely to use to refer to all previous wills, whether recently made or not.

Again, it is evident from will "X" in clause 4 that it was incomplete, and needed correction in this, that it appointed as executors, his wife, his son, Jno. W. Harris, and his daughter, Rebecca P. Harris. But in another clause it provides that his wife and any two of his other executors shall have power to make sales of property. It is apparent from this that he had intended to name at least four executors. In clause 4 of the will "Y" four are named and this mistake corrected, indicating that this was the result of reflection after writing will "X."

The same can be said of the fact that in will "X" the clause giving the wife and any two of the executors power to make sales is detached from clause 4 and follows it in such a way as to show that it was an afterthought, after finishing clause 4, while clause 4 of will "Y" embodies the whole matter connectedly, which indicates a revision of will "X."

Other intrinsic circumstances are referred to by appellants as indicating that will "Y" was a rewriting and reforming of will "X," but we think enough has been shown to enforce the conclusion that of these two papers the will "Y" expressed the final wishes of the testator.

There are assignments of error in the briefs of appellants, includ-

ing Hefley, which complain of certain statements in the court's conclusions of fact as not warranted by the evidence. These statements are not of any material importance in view of the general facts which control the case.

What has been stated in the course of this opinion disposes practically of all the assignments of error.

The result we have reached is that the will "Y" should have been admitted to probate as the last will and testament of John W. Harris.

The judgment is reversed and judgment rendered accordingly, upon the application of the Orphan Asylum and the intervener, Hefley.

### ON APPELLEES' MOTION FOR REHEARING.

In this motion it is claimed that we have overruled Guffey P. Co. v. Hooks, 47 Texas Civ. App., 560. The principle announced in that case is that the record of an act of adoption is constructive notice to all persons. Our opinion does not hold to the contrary. We simply hold that upon the issue of default, in reference to the probating of a will, the want of actual knowledge is a factor entitled to be considered. In Henry v. Roe, 83 Texas, 450, the Supreme Court indicates very clearly that all that is necessary is an equitable explanation of the apparent laches. The facts and circumstances of this case may, notwithstanding what is said in the main opinion, constitute a reasonable and equitable excuse for the delay on the part of the children of John W. Harris, but our opinion is, as there expressed, that the persons having control and custody of the will are not excused, even by the apparent and peculiar conditions confronting said children, from its timely probate.

It is further contended in this motion, that as Mrs. Harris repudiated the will, the one-fifth which was conditionally devised to her, was not disposed of by the will, and as to that Judge Harris died intestate. This seems to be a question not hitherto raised. However, we do not understand that she repudiated the provision the will made for her. The finding of the court was that upon his death the wills of Judge Harris were read at a family meeting, that all were surprised at their contents in regard to the recital that the great bulk of his property was his separate estate, when they knew it to be community, and at his devising only one-fifth of it to his wife, and Mrs. Harris was surprised that her daughter, Mrs. Masterson, was not treated on a parity with the others, and it was unanimously agreed by Mrs. Harris, Rebecca, Jno. W. Jr., Lillie B. and Cora L. Harris that the probate of the papers would seriously reflect on Judge Harris's memory, and they determined that they should not be offered for probate but should be withheld and ignored, and that Mrs. Harris's half interest in all the property should be recognized and the other half divided into four equal shares among themselves. The above does not, we think, evidence a renunciation by Mrs. Harris of what the will devises to her. It shows that she accepted it and in addition accepted what the others voluntarily and spontaneously yielded to her from what was devised to them. However, this would not seem a question that arises on an application to probate the will.

Another matter discussed in the motion is that the District Court found "that the St. Mary's Orphan Asylum and Hefley's applications to probate were made at the instance of John W. Harris, Jr., owing to apprehensions that he and those claiming in like interest were barred by limitations." It was not found as a fact, nor could it be on the undisputed evidence here, that there was any collusion for said purpose between these parties when the Orphan Asylum and Hefley became interested parties. If they, in good faith, acquired the right to apply, the motives inducing them to assert that right are immaterial.

We are requested to modify the decree which we have entered, by having it read so that the probate will inure to the benefit of the Orphan Asylum and Hefley only, and as a muniment to perfect their respective titles only, and without prejudice to the rights of other parties. There appear from this record to be numerous other vendees similarly interested. All we think it proper for us to do is to grant the probate; the effect of this at this late date could extend no further than its use as evidence of title, letters testamentary being expressly forbidden. The effect of such a probate and the extent of its operation are questions not before us, and we decline to make any adjudication that may be construed as being an expression on that subject. The motion is overruled.

*Reversed and rendered.*

Writ of error refused.