MASTERSON et al. v. HARRIS et al.
(No. 5852.)

(Court of Civil Appeals of Texas. Galveston. June 25, 1915. Rehearing Denied Oct. 7, 1915.)

1. APPEAL AND ERROR ☞1195 — RULES OF DECISION—STATE SUPREME COURT.
The answers to questions propounded by the Court of Civil Appeals to the Supreme Court are conclusive upon the Court of Civil Appeals.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4661–4665; Dec. Dig. ☞1195.]

2. WILLS ☞230—WITHHOLDING FROM PROBATE—AGREEMENT BETWEEN HEIRS—ESTOPPEL.
The agreement between the widow and the children of a testator, whose will contained a devise of $3,000 to plaintiff's mother for the education of her children, conditioned upon the widow's acceptance of the will in lieu of her community interest, to withhold it from probate and to take agreed shares of the estate, at which time the plaintiff's father stated that the other parties might do as they pleased and not consider his children, and the ratification of such agreement by acting thereunder for 21 years up to the widow's death, did not estop them from claiming title under the will after it had been probated at the instance of purchasers of realty from the estate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 555–559; Dec. Dig. ☞230.]

3. ADOPTION ☞6 — EVIDENCE — INTEREST OF ADOPTED CHILD.
In an action for partition of the estates of a decedent, his wife, and their daughter, evidence held not to sustain a finding that it was intended by decedent that a daughter of his intended wife, whom he adopted on his marriage to her mother, should be treated as his own and have a child's interest in his estate, so as to be entitled to take in case of intestacy or testament equally with his own children.

[Ed. Note.—For other cases, see Adoption, Cent. Dig. § 11; Dec. Dig. ☞6.]

4. ADOPTION ☞6—PLEADING — INTEREST OF ADOPTED CHILD.
In such action, where no such contract of adoption was pleaded, but only a promise to adopt and performance by decedent on the day of his marriage with the child's mother by executing and filing an instrument of adoption whereby she became his legal heir, proof that decedent had intended that the adopted child, under whom plaintiffs claim, should have the same interest in his estate as his own children, could not properly become the basis of a judgment in plaintiffs' favor.

[Ed. Note.—For other cases, see Adoption, Cent. Dig. § 11; Dec. Dig. ☞6.]

Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Action for partition by Thomas W. Masterson and others against John W. Harris and others. Judgment for defendants, and plaintiffs appeal to the Court of Civil Appeals, which certified questions, answered by the Supreme Court. 174 S. W. 570. Affirmed.

D. D. McDonald, of Galveston, and Masterson & Masterson, of Houston, for appellants. Edward F. Harris, Harris & Harris, and P. A. Drouilhet, all of Galveston, and W. H. Newton, of San Antonio, for appellees.

McMEANS, J. Appellants, plaintiffs in the court below, brought this suit against appellees, defendants, for partition of the property of the estates of John W. Harris, deceased, Annie P. Harris, deceased, and Rebecca P. Harris, deceased, alleging that appellants and appellees owned in undivided interests the property of the three estates in the proportions set out in the petition. The case was tried before the court without a jury, and resulted in a judgment for defendants from which the plaintiffs have appealed.

This case was submitted to this court on December 21, 1911. Thereafter, after mature consideration, we concluded to certify to the Supreme Court two questions raised by appellants by appropriate assignments of error, a decision of which we then thought would practically settle the case, and we see no reason now for changing the conclusion then reached. The statement of the case embraced in our certificate is a sufficiently clear statement of the issues presented by the pleadings of the parties and the facts proved at the trial, and we now here adopt and copy the same as a part of this opinion:

"The plaintiffs are the sole devisees under the will of Mrs. Annie Masterson, who died in 1900, leaving a will duly probated (except that one of the plaintiffs is sole beneficiary under the will of one of such devisees). Of the defendants, John W. Harris and Mrs. Cora Dav-

enport are children of John W. Harris and his wife Annie P. Harris, both deceased. Frederick Kenner Fisher is only child and heir of one of such children, Mrs. Elizabeth Byrd Fisher, deceased, and B. R. A. Scott is one of the executors of the will of Mrs. Annie P. Harris. John W. Harris, the executor, is also sued in such capacity. Plaintiffs under appropriate averments, which need not be here more particularly set out, seek partition of the property of the estates of John W. Harris, Mrs. Annie P. Harris, and Miss Rebecca P. Harris, another of the children of John W. and Annie P. Harris, who died intestate in 1900. It was alleged that these three estates of John W. Harris, Annie P. Harris, and Rebecca P. Harris owned in undivided interests the property sought to be partitioned, and that plaintiffs and defendants owned in undivided interests the property of said estates. There is no controversy as to the interests of the parties, respectively, in the property of the estates of Mrs. Annie P. Harris and Miss Rebecca Harris, but defendants deny that plaintiffs have any interests in the property of the estate of John W. Harris proper. Upon the trial the court decreed partition, recognizing the interests of plaintiffs in the property of the estates of Mrs. Harris and Miss Harris, but denied them any interest in the property of the estate of John W. Harris. From this judgment this appeal is prosecuted by plaintiffs.

"John W. Harris died in 1887, leaving surviving him his widow, Mrs. Annie P. Harris, and four children of their marriage, to wit, John W. Harris, Mrs. Cora Davenport, Mrs. Elizabeth Byrd Fisher, and Miss Rebecca P. Harris. There also survived him an adopted daughter, Mrs. Annie W. Masterson, mother of plaintiffs, who was a daughter of Mrs. Annie P. Harris by a former marriage, and who had by instrument of writing duly executed by John W. Harris in 1852, on the day of his marriage to her mother, been adopted 'as his legal heir' under the terms of the statute, which instrument was duly recorded in the records of Matagorda county, where the parties lived; but none of the parties in interest knew anything of this act of adoption until it was discovered by one of plaintiffs in 1906. By the terms of his will John W. Harris devised his entire estate as follows: To his wife, one-fifth of all the property which he acquired before the marriage, and one-fifth of that portion which had been and may be hereafter acquired during the marriage, together with the Galveston homestead during her life, with power to bequeath the same at her death to any one or more of their four children. The bequest was stated to be an extinguishment of all claims which Mrs. Harris had to any of his separate property, or to the community estate, it being stated that much the greater portion of the property theretofore acquired was his separate estate. The rest and residue of his property was left to their four children, to wit, Rebecca P. Harris, John W. Harris, Lillie B. Harris (afterwards Fisher), and Cora L. Harris (now Davenport), share and share alike. There was also left to Branch T. Masterson, husband of Annie W. Masterson, the sum of $3,000, to be used in the education of their children, the present plaintiffs, but this legacy was made conditional upon Mrs. Harris accepting the terms of the will. Mrs. Annie P. Harris, John W. Harris, Branch T. Masterson, and Miss Rebecca P. Harris were appointed independent executors of the will without bond, and were each given $500 as compensation for their services. The will was dated in 1880. Judge Harris died in 1887. Immediately after his death, upon reading of the will in presence of the widow and four children and Mr. Masterson, Mrs. Harris expressed great dissatisfaction with its terms to herself, and also on account of its failure to make any provision for Mrs. Masterson. The four chil-

dren also thought that the will was unjust to their mother, and that to probate it would 'be a reflection upon their father's memory.' This feeling led to, and resulted in, a family compact between Mrs. Harris and her said four children that all of the property should be treated as community, that Mrs. Harris should take one half, and that the heirs at law of John W. Harris should take the other half. In order to carry out the compact, it was agreed that the will should not be probated. This was done, and the property has been since managed by John W. Harris as a whole for the benefit of the parties named and those claiming under them. The right of Mrs. Masterson, or her children after her death, to share in the property was not considered, in so far as the estate of John W. Harris proper is concerned. The legacy to Branch T. Masterson was never paid or demanded.

"In 1906 Thomas W. Masterson, one of the plaintiffs, found upon the records of Matagorda county, duly recorded on the day of its date, in all respects duly executed according to the provisions of the act of 1850 (articles 1, 2, title 1, R. S.), an instrument, signed by John W. Harris, as follows:

" 'The State of Texas, County of Matagorda.

" 'Know all men by these presents, that I, John W. Harris, a resident of the county and state aforesaid, have adopted and do hereby adopt, as my legal heir, Annie W. Dallam, the only child of the late Mrs. Annie P. Dallam, whom I have this day married. Given under my hand and seal this 1st day of July, one thousand eight hundred and fifty-two.

" 'John W. Harris. [Seal.]

" 'Signed, sealed, and delivered in the presence of C. R. Patton. I. R. Lewis.'

"At the time of this discovery Mrs. Annie P. Harris was living, but shortly afterwards she died, leaving a will whereby she left her property to her two surviving children by Judge Harris, Frederick Kenner Fisher, son of Elizabeth Byrd Fisher, and the children of Annie W. Masterson, her child by the former marriage. As stated, the other child of John W. and Annie P. Harris had died in 1900 intestate.

"Upon the filing of this suit in 1908, setting up the rights of Mrs. Annie W. Masterson, or her children, she being deceased, as an adopted 'legal heir' of John W. Harris, to participate in the distribution of his estate, St. Mary's Orphan Asylum of Galveston, a corporation, filed an application in the probate court at Galveston county to have probated the aforesaid will of John W. Harris, alleging as ground for such application that it had in 1901 purchased from the heirs of John W. Harris certain lots in the city of Galveston, that at the time of their said purchase it believed that John W. Harris had died intestate, and that its vendors were entitled to his estate, 'and a probate of the will is necessary and proper to complete, protect, and make good of record and in fact applicant's title to the above mentioned lots.' It was further alleged that applicant was not in default in applying for the probate of the will, because it did not know of its existence until about two weeks before the filing of the application.

"To this application John W. Harris made answer (which answer was adopted by Kenner Fisher, by his guardian, and Mrs. Davenport), setting up the execution of the will, the death of John W. Harris, and the family compact herein referred to. They admitted the allegations of the Orphan Asylum and its interest in the probate of the will, and that such probate was necessary and proper 'to complete, protect, perfect, and make good of record and in fact its title' to the property mentioned. It was further represented that about 80 other persons, citizens of Texas, occupied the same attitude as purchasers of lands from said heirs as the Orphan Asylum, and that there was as to them the

same necessity to probate the will for the purpose of protecting their titles, and in addition that about 250 persons had leased lands from said heirs, and for the protection of their rights there was the same necessity to probate the will. Respondents specially admit and recognize the right of the estate of Mrs. Annie P. Harris to one-half of the property of John W. Harris and Annie P. Harris, as fixed by law at the date of the death of John W. Harris. The further allegation is made as to the necessity for the probate of the will arising from the fact of the discovery of the act of adoption by John W. Harris of Mrs. Annie W. Masterson, as herein set out, and the filing of this suit for partition. W. T. Hefley intervened, also praying for the probate of the will, alleging that he was also purchaser of certain lands from the heirs of John W. Harris, that the probate of the will was necessary to protect, perfect, and make good his title, alleging substantially the same grounds that are set out in the petition of the Orphan Asylum.

"The probate of the will was contested by the plaintiffs in the present action, devisees of Mrs. Annie W. Masterson, deceased. In their answer, which is very lengthy, they alleged that 'John W. Harris and Annie Pleasants Dallam, who was then a widow, then citizens of the county of Matagorda and state of Texas, entered into an antenuptial marriage contract, in which they agreed to be married, and John W. Harris agreed that on that day of the marriage he would adopt as his legal heir Annie W. Dallam, who was a child of said Annie Pleasants Dallam by her former marriage; that in conformity with said contract said John W. Harris and Annie Pleasants Dallam were married on the 1st day of July, 1852, and on the same day he, the said John W. Harris, by an instrument in writing duly executed by him and duly filed and recorded in the office of the clerk of the county court of Matagorda county, adopted said Annie W. Dallam as his legal heir and thereby faithfully performed his aforesaid contract; that thereupon the said Annie W. Dallam became the legal heir of said John W. Harris, and became entitled to all of the rights and privileges in law and in equity of a legal heir of said John W. Harris.' They also alleged substantially the facts hereinbefore set out with regard to the death of John W. Harris and the family agreement not to probate the will, setting out in detail the circumstances with regard thereto. They disclaim any right to or interest in the lands or other property conveyed to the Orphan Asylum or Hefley, or others, and admit the validity of all such conveyances, and of all leases executed by said heirs, and disclaim any desire or intention to disturb the same. The said contestants conclude: 'And these contestants say that the legacy of three thousand dollars directed to be paid over to Branch T. Masterson to be expended in the education of these contestants by reason of said agreement not to probate either of said alleged wills and the actual failure and refusal to probate the same by said John W. Harris, Jr., Rebecca P. Harris, Lillie B. Fisher, and Cora L. Davenport, deprived these contestants of the benefit of said legacy, and the same remained in the estate in which each of said parties have been receiving and are entitled to receive their respective shares, and by asserting their right thereto as heirs at law each of said parties is estopped to deny that they hold their respective shares as such heirs, and by asserting their right thereto as heirs at law each of said parties are estopped to deny that they hold their respective interests as heirs at law of said John W. Harris, and are estopped from having either of said alleged wills probated, and are estopped to claim as devisees under said alleged wills, or either of them, and these contestants deny that said alleged will attached to the application of said St. Mary's Orphan Asylum, or said Exhibit X, and attached to the

answer of said John W. Harris, or either of said papers, is the last will of said John W. Harris, deceased. Wherefore these contestants pray that all of said applications for probate of said alleged wills of said John W. Harris, deceased, be refused and dismissed at the cost of the respective applicants.'

"The county court in this proceeding admitted the will to probate upon the application of all the persons praying therefor. On appeal to the district court, probate was refused upon any of the applications. From this judgment the Orphan Asylum, Hefley, and John W. Harris, Kenner Fisher, and Mrs. Davenport appealed. The Orphan Asylum and Hefley gave separate appeal bonds, and John W. Harris, Kenner Fisher, and Mrs. Davenport executed a joint appeal bond. By the judgment of the Court of Civil Appeals of the Fourth District the judgment of the district court was reversed, and judgment rendered 'that the applications of appellants, St. Mary's Orphan Asylum of Galveston, Texas, and W. T. Hefley, for the probate of the last will and testament of John W. Harris, deceased, be and the same is hereby granted.' The opinion of that court upon the original submission, and also upon motion for rehearing (which is reported in 57 Tex. Civ. App. 646, 122 S. W. 587, case styled St. Mary's Orphan Asylum of Texas v. T. B. Masterson et al.) is referred to and made a part of this statement to illustrate and explain the questions here presented. All of the facts herein set out were embraced in the pleadings of the parties by appropriate averments. Conclusions of fact and law were filed by the trial judge. The conclusions of fact, with slight exception, are adopted by us. At the risk of repetition of much that has been heretofore stated, we here set out such conclusions:

"'In the early part of the summer of 1852 Judge John Harris and Mrs. Annie P. Dallam, a widow with one child (Annie W. Dallam, about five years old, afterwards Annie W. Masterson, by marriage with Branch T. Masterson), became engaged to be married. In his proposal of marriage to Mrs. Dallam, Judge Harris said that he would adopt her daughter, Annie W. Dallam, as his own child, and urged this as a consideration for Mrs. Dallam's accepting his proposal. She did accept his proposal so made, and on the day they were married, July 1, 1852, Judge Harris duly adopted the said Annie W. Dallam by an instrument in writing duly acknowledged and filed on the 16th day of that month in the office of the county clerk of Matagorda county, where at the time both parties resided. The fact that he had so adopted her was not known to any of the parties to this suit, or to any other member of the Masterson and Harris families, as far as disclosed by the evidence, until the month of July, 1906, when Mr. Thomas W. Masterson happened to discover the act of adoption in the office of the county clerk of Matagorda county. The court finds as a fact that it was intended by Judge Harris in his proposal to Mrs. Dallam that the child should be treated as his own, and that she should have a child's interest in his estate.

"'So far as disclosed by the evidence, Mrs. Annie P. Harris never mentioned the fact of Judge Harris' promise to adopt the child of her first marriage to any member of the family until on the 1st day of April, 1887, after Judge Harris' death, when the two purported wills were produced by John W. Harris, Jr., son of Judge Harris, who, for some time previous to his father's death and on account of his failing health, had charge of his father's business affairs and custody of his papers, at a meeting of the members of the Harris family, consisting of Mrs. Annie P. Harris, her daughters, Lillie, Rebecca, and Cora, and son, John W. Harris, Jr., and at which Mr. Branch T. Masterson was also present by invitation. She did not then mention it in the meeting, but after both

instruments had been read and general surprise expressed at their contents, particularly at the attempt to dispose of the entire estate as though it were his separate property, when it was notorious that it was community of the marriage, she called Mr. Branch T. Masterson aside in another room and expressed her own surprise that Judge Harris had not made provision for their daughter, Annie W., and then stated to him Judge Harris' promise at the time she accepted his proposal of marriage, and added that she had always supposed that he had kept his promise, but now that it seemed he had not. She subsequently made the same statement to one of her grandchildren, probably on more than one occasion.

" 'At said meeting it was agreed by Mrs. Harris and her children by Judge Harris, they being the exclusive devisees under each of said instruments, not to offer the same for probate, because they thought what they considered to be the injustice of the wills to Mrs. Harris would be a reflection on Judge Harris' memory, and it was agreed between them that the whole estate should be considered as community, Mrs. Harris taking one half interest and Mr. Harris' four children the other half in equal parts, as though he had died intestate; and Mr. Masterson, being asked what he thought of this, assented to it, saying, in substance, that they could do what they pleased, that if they did not offer the wills for probate he would not, and that they need not consider his children (referring to the legacy of $3,000 for their benefit), as he was able to care for his own children. The wills were accordingly withheld from probate until after the discovery of the act of adoption, more than 20 years after Judge Harris' death; Mrs. Annie P. Harris and her daughter, Mrs. Annie W. Masterson, having died in the interim.

" 'The will of Judge Harris was duly probated in Galveston county on the 10th day of February, 1910, pursuant to the decree of the Court of Civil Appeals of the Fourth Supreme Judicial District, in the case entitled "In the Matter of the Estate of John W. Harris, Deceased, Application for Probate of Will," No. 26,731 in this court, and to the orders of this court also made pursuant to said decree, and copy is hereto attached and marked Exhibit B. The case is reported in 57 Tex. Civ. App. 587, 122 S. W. 587. The plaintiffs and those under whom they claim are the only devisees of Mrs. Annie W. Masterson; and the defendants (other than the executors and administrator) and those under whom they claim are the only devisees of Judge John W. Harris; and said plaintiffs and defendants and those under whom they claim are the only devisees of Mrs. Annie P. Harris. These estates consist of a large number of tracts of land in different parts of the state, and other property, which it is agreed, for the purposes of this case, was all originally community of the marriage of Judge John W. Harris and his wife, Annie P. Harris. The accounts of John W. Harris, Jr., who has had charge of the property since his father's death, have been audited and found correct.' "

Under the foregoing facts it was the contention of appellants that: First. The probate of the will of John W. Harris by the Court of Civil Appeals is a limited probate, inuring to the benefit of the Orphan Asylum and W. T. Hefley, and that appellees John W. Harris, Kenner Fisher, and Mrs. Davenport, having been held in default by said court in failing to probate the will within four years, can take no benefits thereunder, but that, as to them, John W. Harris must be treated as having died intestate. Second. That by virtue of the antenuptial agreement of John W. Harris with Mrs. Annie P. Dallam and the subsequent act of adoption of her child, Mrs. Annie W. Masterson, he was estopped and prevented from making any will which by its terms did not make provision for his said adopted child equally with his own children.

The questions propounded to the Supreme Court are:

"First. Did the probate of said will inure to the benefit of appellees as devisees thereunder, or is the same to be limited in its operation to the parties upon whose application it was probated, to wit, St. Mary's Orphan Asylum and W. T. Hefley?

"Second. Does the verbal agreement between John W. Harris and Mrs. Annie P. Dallam, made in prospect of their marriage, and the subsequent act of adoption by John W. Harris of the child of said wife, operate to prevent or interfere with his right to make such disposition of his property and estate by will as was done by the will admitted to probate?"

[1] The Supreme Court, in reply to these questions (see Masterson v. Harris, 174 S. W. 570), answered that the probate of the will in question inured to the benefit of the appellees, and decided the second question in the negative. These answers are conclusive upon us, and require us to overrule all of appellants' assignments of error in which the questions are presented.

[2] By their fifth assignment of error appellants complain that the court erred in holding that the agreement between John W. Harris, Jr., Cora L. Davenport, Rebecca P. Harris, and Lillie B. Harris, and their mother, Annie P. Harris, not to probate the will of John W. Harris, and to set said will aside and ignore it, coupled with their ratification of such agreement by acting under it for 21 years, did not preclude them from now claiming title under said will. Under this assignment there is urged a proposition to the effect that, where the widow and children of deceased, having custody of the will, agreed with each other to not have the will probated, and that one of the children, John W. Harris, should be manager of the estate, and the property would be treated as if the deceased had died intestate, and the widow was agreed by them to be the owner of one-half of the property and should take against the will, and the will was in the custody of the widow and the manager and other children of the deceased for more than 20 years after the death of the deceased, and during that entire period the agreement was carried out by all the parties to it, and large amounts of money drawn from the estate by each of the parties to the agreement, and several thousand acres of land belonging to the estate were sold by said widow and children as heirs, and the proceeds used by them, the agreement is binding on all of the parties to it, and after the death of the widow and two of the children, who were parties to the agreement, the other children cannot repudiate the agreement, retain the proceeds of the land sold

and money of the estate received by them under it, and claim the estate as devisees under the repudiated will, which the court refused to probate on their application; that under such state of facts the agreement is binding on the parties, and that they did not acquire any right under the will, and could not take as devisees under the will, but only as heirs at law according to the agreement. The facts upon which the plea of estoppel is predicated are set out in our findings of fact, supra, and will not be here repeated. We agree with the trial judge that:

"What transpired at the meeting of the members of the Harris family and Mr. Branch T. Masterson at the time of the reading of the wills, immediately after Judge Harris' death, did not constitute such an agreement as the plaintiffs can avail themselves of, and does not operate to estop the devisees under Judge Harris' will from availing themselves of the probate thereof."

Certainly estoppel cannot be predicated upon the agreement of Mr. Masterson not to insist upon receiving the $3,000 bequeathed to him in trust for his children and to be used for their education. This bequest was conditioned on Mrs. Harris' acceptance of the will in lieu of her community interest, and the evidence clearly shows that she rejected it. On this point Mr. Masterson testified that at the meeting at which the wills were read Mrs. Harris expressed dissatisfaction with the will and said that she did not think it was just to her, that it was not the will she had understood Mr. Harris intended to make, and that she would not recognize it. The fact that the will was not offered for probate, and that all of the parties to the agreement agreed that Mrs. Harris, instead of taking under the will, should take a half interest in all the property, and the fact that this agreement was recognized and acquiesced in during the remainder of Mrs. Harris' life is proof that the contingency under which the bequest of the $3,000 to Mr. Masterson should be payable never arose. His response, upon being asked by the parties to the agreement as to what he thought of it and in assenting to it, that "they could do as they pleased, that if they did not offer the wills for probate he would not, and that they need not consider his children (referring to the legacy for their benefit), as he was able to care for his own children," was not of a contractual nature, "but rather the spirited reply of an independent gentleman, who thought his wife had not been teated in the alleged wills with the consideration she had a right to expect from one who from early childhood had otherwise shown her paternal affection." The assignment cannot be sustained.

[3, 4] We come now to a consideration of a cross-assignment of error presented by the appellees. It is as follows:

"The court erred in finding as a fact that it was intended by Judge Harris in his proposal to Mrs. Dallam that the child should be treated as his own, and that she should have a child's interest in his estate—meaning thereby such an interest as the child would be entitled to take in case of intestacy, or in case of last will and testament by equal provision with his own children, if any, and it was so understood by Mrs. Dallam."

The assignment contains the exact language of the finding complained of. In our statement made in certifying questions to the Supreme Court, which is adopted as our statement in this opinion, we omitted therefrom that portion of the court's findings which reads as follows:

"Meaning thereby such an interest as the child would be entitled to take in case of intestacy, or in case of last will and testament by equal provision with his own children, if any, and it was so understood by Mrs. Dallam."

We did this because, after a careful consideration of all the evidence bearing upon the point, we concluded that the finding was not justified. The evidence upon this issue consists of proof of statements made by Mrs. Harris as to what the antenuptial agreement between herself and Mr. Harris was. On this point Mr. Branch T. Masterson testified that just after the reading of the wills Mrs. Harris said to him, quoting the language of the witness:

"Well, she said to me that, at the time she became engaged to Mr. Harris, engaged to marry him, he had promised to adopt her daughter as his daughter."

Miss Reba Masterson, one of the plaintiffs, a granddaughter of Mrs. Harris, testified to a conversation she had with her grandmother on this subject, as follows:

"She said they were standing at the gate, my mother was standing beside them, and that he was saying how much better it would be for the child, too, if she would consent to marry him. He said that he would adopt her as his own, and then grandma went on to say that he did adopt her."

Again she says:

"She laid special stress upon his having promised to adopt her; * * * that he said as soon as they were married he would make her his own child."

The findings of fact in the probate proceedings, which were introduced in evidence, and to the introduction of which no objection is here urged, contain the following:

"Here Mr. Harris promised to adopt her little child, Annie W. Dallam, about four years old, for whom he had already shown affection, then in company with her mother. He said he would adopt her legally the day they were married." "The next day Mrs. Harris told Mr. Branch T. Masterson she wished to see him privately, and when they were alone she said that Mr. Harris had promised her at the time they were engaged to be married that he would adopt her daughter, Annie, legally, and treat her as his own child. She said she had never asked him whether he had in fact legally adopted her or not, but had always supposed he had, but now saw he had not kept his word to her, referring to no provision being made for her in his wills."

We think that this evidence proves nothing more than a promise upon the part of Mr. Harris that he would adopt Annie W.

Dallam as his heir under the statute as it then existed, and falls short of proof that he contracted with Mrs. Dallam· that her child should have an interest in his estate—meaning thereby such an interest as the child would be entitled to take in case of intestacy, or in case of last will and testament by equal provision with his own children. But if we are mistaken in this, and even if the evidence had shown the existence of ·a binding contract upon the part of Mr. Harris to give to the child such an interest in his estate as a child of his own would take in case of intestacy, or in case of last will and testament by equal provision with his own children, we do not think, in view of the state of the pleadings of the plaintiffs, that the proof of such facts could properly in any event have become the basis of a judgment in their favor. No such contract was pleaded, but only the promise to adopt, and the fact that the promise was faithfully performed by Mr. Harris on the day of his marriage with Mrs. Dallam, by executing an instrument of adoption and filing the same for record in the office of the county clerk of the county of their residence. Their pleading on this point is as follows:

"That heretofore, to wit, in 1852, John W. Harris and Annie Pleasants Dallam, who was then a widow, then citizens of the county of Matagorda and state of Texas, entered into an antenuptial marriage contract in which they agreed to be married, and she and John W. Harris agreed that on the day of the marriage he would adopt as his legal heir· Annie W. Dallam, who was a child of said Annie Pleasants Dallam by her former marriage. That in conformity with said contract said John W. Harris and Annie Pleasants Dallam were married on the 1st day of July, 1852, and on the same day he, the said John W. Harris, by an instrument in writing duly executed by him and duly filed and recorded in the office of the clerk of the county court of Matagorda county, adopted said Annie W. Dallam as his legal heir, and thereby faithfully performed his aforesaid contract. That thereupon the said Annie W. Dallam became the legal heir of said John W. Harris, and became entitled to all the rights and privileges in law and equity of a legal heir of said John W. Harris."

For these reasons the findings of fact by the trial court, complained of in the cross-assignment, cannot be adopted by us as a part of our findings of fact. In view of the importance of the legal principles involved in the questions presented for review upon this appeal, and of the magnitude of the estate in litigation, we have given mature consideration to all the questions presented by appellants for a reversal of the judgment appealed from; but it is our conclusion that none of their assignments point out reversible error. The only two questions in regard to which we have had serious doubt have been decided by the Supreme Court adversely to appellants. We think the judgment of the court below should be affirmed, and it has been so ordered.

Affirmed.