**MATT et al. v. WARD et al. (No. 10352.)** *

(Court of Civil Appeals of Texas. Fort
Worth. Oct. 3, 1923. Rehearing
Denied Nov. 10, 1923.)

Wills ☞260—Heir of devisee charged with
devisee's default in not presenting will for
probate.

Within Vernon's Sayles' Ann. Civ. St. 1914,
art. 3248, prohibiting admission of will to pro-
bate more than four years after testator's
death, unless the party applying therefor was
not in default in failing to present it earlier, a
devisee knowing for months before her death
of the existence of the will, and failing to pre-
sent it for probate, her heir may not have it
probated after lapse of the four years, though
presenting it soon after learning of it.

Appeal from District Court, Parker Coun-
ty; F. O. McKiresey, Judge.

Probate proceedings between Lucinda Matt
and another and Charles Ward and another.
From judgment admitting will to probate,
contestants appeal. Reversed.

Martin & Hook, of Weatherford, for appel-
lants.

Grindstaff & Zellers, of Weatherford, for
appellees.

BUCK, J. This is an appeal from an order
and judgment of the district court of Parker
county, admitting to probate the last will and
testament of Caroline Prince, an old negress
who died at Weatherford on December 11,
1914. The will is dated September 4, 1914.
Caroline Prince, probably 80 years old or
more, was the widow of Bird Prince, and
had three children, a son, Charles Ward, and
one daughter named Phoebe Hinds or Phoebe
Fisher, and another daughter named Rose
Hullum. Rose Hullum died before her moth-
er did, leaving a daughter Lucinda, intermar-
ried with John Matt. Phoebe Hinds died
subsequent to her mother, leaving a son, Will
Browning. The contest over the probate of
the will is between Lucinda Matt and Will
Browning.

The evidence tends to show and the court
found that, subsequent to the death of Caro-
line Prince, Charles Ward and Phoebe Hinds
knew of the existence of the last will and
testament of Caroline Prince, and that they
discussed the question whether or not it was
necessary to have the will probated. In the
will the testatrix left all of her property to
her son Charles Ward and her daughter Phoe-
be Hinds, and stated that she did not leave
anything to her granddaughter, now Lucinda
Matt, since her son, Charles' Ward, had had
to pay all of the burial expenses of her daugh-
ter Rose Hullum. The court further found
that Will Browning did not know of the exist-
ence of the will until shortly before he offer-
ed the will for probate. The petition for

the probate of the will was filed August 9,
1920, by Will Browning, nearly six years aft-
er the death of Caroline Prince.

Appellant urges error in the trial court's
actions in several respects: First, she says
that the great preponderance of the evidence
shows that Caroline Prince, for at least a
year before she died, was in failing health,
weakened in mind and not of testamentary
capacity; second, that the great preponder-
ance of the evidence shows that she was un-
duly influenced by her son, Charles Ward, to
make the will, excluding from its benefits her
granddaughter, Lucinda Matt; third, that
since the court found that the proponent Will
Browning's mother knew of the existence of
the will before her death and would have
been precluded by the terms of articles 3247
and 3248, Revised Statutes, from offering the
will for probate at this late time, her heir,
the proponent here, would also be precluded;
fourth, she urges that the testimony shows
that Will Browning did not want to offer the
will for probate but that he was induced to
do so by the urging and threats of his uncle,
Charles Ward, and that in fact Ward was
the proponent. Other grounds are urged for
a reversal.

We do not think it necessary to discuss all
of the questions raised, but confine our con-
sideration to the third question before noted.
Ward did not testify at the trial. Will
Browning testified that he was about 50
years old, and that his mother was Phoebe
Fisher, otherwise known as Phoebe Hinds.
That his mother, Charles Ward, and Rose
Hullum were brother and sisters, the chil-
dren of Caroline Prince. That after the
death of his grandmother and on about the
19th of June, 1915, he and his mother moved
from Fort Worth to Weatherford to live.
That there were two houses on the lot or lots
formerly owned by his grandmother, and that
his mother lived in one and that his Uncle
Charley lived in the other. That one time
he heard his mother and Uncle Charley talk-
ing about a paper that his mother had in
her hands. That his mother told Uncle
Charley that he ought to have "this deed
straighted up, fixing everything up, and
Uncle Charley said he was going to have that
thing done." That they had a paper in their
hands when they were talking. That Uncle
Charley did not have the matter attended to.
That they lived in one of the houses formerly
belonging to his grandmother until his mother
died. As before stated, the court found, and
there is no objection raised to the sufficiency
of the evidence to support this finding, that
Charley Ward and Phoebe Hinds knew of the
existence of the will soon after the death of
Caroline Prince, and that said will was in
the possession of Charley Ward until offered
for probate, which offer was made more than
four years after the death of Caroline Prince.
That Phoebe Hinds died intestate, leaving as

───────────────────────────────

her sole surviving child and heir the proponent, Will Browning, who succeeded to all the property and rights of his mother under said will. That the proponent, Will Browning, "who lives in or near the edge of the twilight zone separating those mentally responsible from those who are not, had no notice that Caroline Prince had left a will, and that he was not negligent in failing sooner to discover the existence of such will." The court further found that Will Browning filed for probate the will within a reasonable time after learning of its existence.

In Armendariz de Acosta v. Cadena (Tex. Civ. App.) 165 S. W. 555 (writ denied), it is said:

"It appears that he [proponent] was advised of the contents of the instrument within a month after the death of the testator, and that he waived the provisions of the will in favor of a verbal agreement, which he entered into with the other beneficiaries thereunder. * * * Because the other parties to the agreement refused to carry out its terms is not a sufficient excuse under the statute to avoid this delay."

In Portis v. Hill, 30 Tex. 529–568 (98 Am. Dec. 481), it is said:

"Where an ancestor has acquiesced in acts so as to conclude her, her heirs are likewise concluded."

In Stephenson v. Wiess (Tex. Civ. App.) 145 S. W. 287–289, writ denied 147 S. W. xv, it is said:

"The parties, parents and grandparents of appellants, and heirs of both Henry and Ruth Stephenson, petitioned for the sale of the entire league, as the property of the estate of Henry Stephenson, and appellants, suing as their heirs, are estopped to set up at this date that only the title of Henry Stephenson passed by the sale."

In 9 R. C. L. pp. 87, 88, § 83, it is said:

"Heirs occupy the place of their ancestor. They take precisely the same interest in the property which he had at the time of his death and have no greater or better claim than he had. They hold the property inherited from him precisely as he held it, subject to the same conditions and equities which attached to it in his hands, and incumbered with all the liens existing thereon in his lifetime. They also take it subject to its liability for his debts. Admissions of the ancestor, which could affect him if he were a party, are receivable in evidence against his heirs. Hence, in an action where the plaintiffs' title is partly as heir of their father, a letter written by him tending to show that he had made a sale and conveyance of the property to the defendant is competent evidence against them. Nor have the heirs of a woman any greater right to disavow her child than she herself would have had. But a creditor of the ancestor has no right to call on the heirs for the rents and profits of a tract of land received by them prior to the time that he acquired a lien on such land by

judgment or otherwise, since he could not have done so as against the ancestor."

Administration of Estates in Texas, by Judge Simkins, page 665, says:

"All applications for grant of letters testamentary must be made within four years after the death of the testator. If four years should elapse before the application is made such application should be refused and dismissed. This article and the proceedings have already been discussed in the administration and estates. See Elwell v. Convention, 76 Tex. 514, 13 S. W. 552, for exception to the rule. Vernon's Sayles' 1914 (& Rev. St.) arts. 3247, 3248. May be probated after four years to establish chain of title. Ryan v. Texas & P. R., 64 Tex. 242; Ochoa v. Miller, 59 Tex. 462. See Armendariz de Acosta v. Cadena (Tex. Civ. App.) 165 S. W. 555. Delay not accounted for. St. Mary's Orphan Asylum v. Masterson, 57 Tex. Civ. App. 646, 122 S. W. 588. As heretofore stated, it may be probated after four years as a link in a title. Ryan v. Railway, 64 Tex. 239, Dew v. Dew, 23 Tex. Civ. App. 676, 57 S. W. 926; Pena v. Bruni (Tex. Civ. App.) 156 S. W. 315."

Article 3248, V. S. Tex. Civ. Statutes, reads:

"No will shall be admitted to probate after the lapse of four years from the death of the testator, unless it be shown by proof that the party applying for such probate was not in default in failing to present the same for probate within the four years aforesaid; and in no case shall letters testamentary be issued where a will is admitted to probate after the lapse of four years from the death of the testator."

We conclude that the mother of proponent Will Browning, knowing months before her death of the existence of the will of her mother, Caroline Prince, and failing to offer it for probate, that her son the proponent would be precluded from having such will probated after the lapse of nearly six years, and that the trial court erred in admitting the will to probate. Hence the judgment below will be reversed, the probate proceedings set aside, and this judgment be certified both to the district court and to the county court for observance. The costs incurred in this court and in the trial court will be adjudged against the appellee.

### Appellee's Motion for Rehearing.

Appellee urges with vigor that we erred in holding that the knowledge which the court found, and which the evidence sustains, that appellee's mother, before her death, had of the existence of the will, should be imputed to appellee. He cites in support of this contention the additional case of Abrams et al. v. Ross' Estate et al., 250 S. W. 1019, by the Commission of Appeals, approved by the Supreme Court, In this case the court says:

"If any of the children of George C. Tennille, the immediate legatees under said will, knew or by the exercise of ordinary care could have known of the existence thereof, he or she was

in default. If any such legatee afterwards died, such default would bar his or her descendents from any right to have such will probated."

Appellee thinks the holding contained in the quotation was but obiter dicta, and that the decisions cited in the opinion do not sustain the holding. We do not find that the decisions referred to in the cited case are given in support of this holding, nor are we certain that the holding is obiter dicta. At any rate, we believe the holding is in accord with the authorities cited in our original opinion, and we find none contrary thereto.

The motion for rehearing is overruled.