# IN THE SUPREME COURT OF TEXAS

═══════════
No. 17-0901
═══════════

LINDA FERREIRA, PETITIONER,

v.

DOUGLAS W. BUTLER AND DEBRA L. BUTLER, RESPONDENTS

════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS
════════════════════════════════════

**Argued December 6, 2018**

CHIEF JUSTICE HECHT delivered the opinion of the Court.

JUSTICE BUSBY did not participate in the decision.

A Texas statute provides that "a will may not be admitted to probate after the fourth anniversary of the testator's death unless . . . *the applicant* for the probate of the will was not in default in failing to" probate the will within that period.[1] In *Faris v. Faris*, we held that a devisee's default is imputed to his own devisee, though the latter is not himself in default.[2] But the statute plainly states that it is the applicant who must be in default for limitations to run. We have never

---

[1] TEX. EST. CODE § 256.003(a) (emphasis added). All statutory references are to the Estates Code unless otherwise indicated.

[2] 138 S.W.2d 830, 832 (Tex. App.—Dallas 1940, writ ref'd).

cited *Faris*, and today we overrule it. We vacate the lower courts' judgments and remand the case to the trial court.[3]

## I

After Norman and Linda Ferreira divorced, Norman married Patricia Hill, whose children from a prior marriage include petitioners Douglas and Debra Butler ("the Butlers"). Patricia died in 2006. Her will left her entire estate to Norman. Norman never probated Patricia's will, never remarried, and died in 2015. His will left most of his estate to Linda, who was appointed as executor.

Linda discovered Patricia's will while going through Norman's belongings after his death. In her capacity as executor of Norman's estate, she offered the will for probate as a muniment of title nine years after Patricia's death. The Butlers, Patricia's intestate heirs, contested the probate of her will on the ground that it was barred by the four-year limitations period in Section 256.003(a) of the Estates Code, quoted above. The Butlers argued that Norman's failure to probate Patricia's will is the relevant "default" under the statute. In response, Linda offered no evidence that Norman was not in default in failing to probate Patricia's will but asserted that she, not Norman, is the "applicant" in Section 256.003(a), and that she was not "in default" because she offered the will for probate only a month after discovering it. The trial court granted the Butlers' motion for summary judgment and dismissed Linda's application to probate Patricia's will.

---

[3] *See* TEX. R. APP. P. 60.2(f) ("The Supreme Court may: . . . (f) vacate the lower court's judgment and remand the case for further proceedings in light of changes in the law.").

2

The court of appeals affirmed.[4] The court concluded that as the executor of Norman's estate, Linda stood in the estate's shoes, and Norman's default in probating Patricia's will therefore applied to her.[5] Even if Linda had applied to probate the will in her individual capacity as a devisee of a devisee, the court added, Norman's default would still bar her application under *Faris v. Faris*.[6] The court acknowledged that the courts of appeals have split on whether *Faris* requires such a result and concluded that it does.[7]

Two justices concurred on separate grounds. Justice Christopher urged the Court to grant review and revisit *Faris*.[8] She expressed concerns that an applicant in Linda's position could never produce admissible evidence that a deceased devisee was not in default and also that the result of the court's decision—that Patricia's estate must be distributed according to the laws of intestacy—failed to honor Patricia's intent in devising her estate to Norman.[9] Justice Jewell, by contrast, opined that the result compelled by *Faris* "effectuate[d] a deliberate and considered legislative policy choice to prioritize timely resolution of estates over the specific intentions of any

---

[4] 531 S.W.3d 337.

[5] *Id.* at 341–342.

[6] *Id.* at 343.

[7] *Id.* at 342–343.

[8] *Id.* at 345 (Christopher, J., concurring).

[9] *Id.*

3

particular testator."[10] "[A]ccepting Linda's view", he said, "would effectively nullify the legislative balancing of interests inherent in Texas Estates Code section 256.003(a)."[11]

We granted Linda's petition for review.[12]

## II

The four-year limitations period in Section 256.003(a) has been part of Texas statutory law since at least 1879. Then Article 1828 of the Revised Civil Statutes provided: "No will shall be admitted to probate after the lapse of four years from the death of the testator, unless it be shown by proof that the party applying for such probate was not in default in failing to present the same for probate within the four years aforesaid".[13] Today Section 256.003(a) of the Estates Code is substantially the same:

> Except as provided by Section 501.001 with respect to a foreign will, a will may not be admitted to probate after the fourth anniversary of the testator's death unless it is shown by proof that *the applicant* for the probate of the will *was not in default* in failing to present the will for probate on or before the fourth anniversary of the testator's death.[14]

The first question presented is: Who is the applicant in this case?

The Estates Code authorizes three categories of persons to apply to probate a will: the testator's executor, "an independent administrator designated by all of the distributees of the

---

[10] *Id.* at 346 (Jewell, J., concurring).

[11] *Id.*

[12] 61 TEX. SUP. CT. J. 1828 (Aug. 31, 2018).

[13] TEX. REV. CIV. STAT. art. 1828 (1879).

[14] § 256.003(a) (emphases added).

decedent" in accordance with the Code, and "an interested person".[15] *Interested person* is, in turn, defined as "an heir, devisee, spouse, creditor, or any other having a property right in or claim against an estate".[16] Linda's application alleges that she qualifies as an interested person "in her capacity as Executrix of . . . [Norman's] Estate". Norman's estate qualifies as an interested person because Norman is Patricia's heir, devisee, and spouse.[17] Linda has never pleaded that she qualifies as an interested person in her individual capacity as Norman's devisee.

The Butlers argue that Linda's pleadings are determinative. We agree in part. The Legislature has decreed that "[t]he rights, powers, and duties of executors and administrators are governed by common law principles to the extent that those principles do not conflict with the statutes of this state."[18] And the common law is clear: an executor "'stands in the shoes' of the decedent."[19] In other words, an executor has no greater powers, rights, or privileges than the decedent whose estate he or she represents. We therefore agree with the court of appeals and the Butlers that "[b]ecause Linda is standing in the shoes of Norman's estate, the default inquiry must focus on Norman."[20] It is undisputed that there is no "proof that [Norman] was not in default" in failing to probate Patricia's

---

[15] § 256.051(a).

[16] § 22.018(1).

[17] *Id.*

[18] § 351.001.

[19] *Smith v. O'Donnell*, 288 S.W.3d 417, 421 (Tex. 2009) (quoting *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*, 192 S.W.3d 780, 787 (Tex. 2006)).

[20] 531 S.W.3d 337, 342.

5

will within four years of her death.[21] Linda is therefore barred from probating Patricia's will in her capacity as Norman's executor.

## III

But that holding does not end our inquiry because Linda would qualify as an interested person in her own right as Norman's devisee. The statutory definition of *interested person* includes anyone "having a property right in or claim against an estate".[22] We have reframed this standing test broadly as whether "the proponent[] possesse[s] a pecuniary interest to be benefited and affected by the probate of the will and one which would . . . be[] materially impaired in the absence of its probate."[23] Because Linda stands to inherit Norman's property, and Patricia's will leaves her property to Norman, Linda has a pecuniary interest that would be affected by the probate of Patricia's will.[24]

The court of appeals held that even if Linda had applied to probate Patricia's will in her individual capacity, Norman's conduct must still be considered in determining the existence of a default because "Linda's right to probate Patricia's will is dependent on the existence of that right in Norman".[25] The court acknowledged "a split among the courts of appeals regarding whether any

---

[21] § 256.003(a).

[22] § 22.018(1).

[23] *Logan v. Thomason*, 202 S.W.2d 212, 216 (Tex. 1947).

[24] *Cf. Dickson v. Dickson*, 5 S.W.2d 744, 747 (Tex. Comm'n App. 1928) (holding that the widow of one of the testator's devisees was an interested person with standing to contest the probate of the testator's will).

[25] 531 S.W.3d at 344.

6

default by a devisee under a will is attributed to that devisee's own heirs or devisees",[26] but it nonetheless followed *Faris v. Faris*, as it was bound to do.[27] One court has characterized the caselaw on this issue as being in "considerable disarray",[28] so we untangle it here.

## A

The facts in *Faris* were that George devised his entire estate to his wife, Sophia, who died 19 years later, never having probated George's will.[29] Sophia's will left the bulk of her estate to her and George's son, Ellsworth, whom she also named as executor.[30] When Ellsworth offered both wills for probate, his brother Cecil contested the probate of George's will.[31] The case was tried to the court, which ruled for Cecil.[32]

The testimony showed that Sophia had possession of George's will until her death and that she kept it in a lockbox at her bank.[33] The trial court "conclude[d] as a matter of law that" Sophia

---

[26] *Id.* at 342.

[27] *Id.* at 343.

[28] *In re Estate of Campbell*, 343 S.W.3d 899, 906 (Tex. App.—Amarillo 2011, no pet.).

[29] 138 S.W.2d 830, 831 (Tex. App.—Dallas 1940, writ ref'd). *Faris* was decided by the court of appeals, but we refused the application for writ of error, giving the court's opinion the precedential value of one of our own. *See Texas Rules of Form: The Greenbook* app. E (Texas Law Review Ass'n ed., 14th ed. 2018) (explaining that between 1927 and 1997, the notation "writ refused" meant that the Court had determined that the "[j]udgment of the court of civil appeals [was] correct", that the Court was "satisfied that the opinion ha[d] correctly declared the law", and that "[s]uch cases have equal precedential value with the . . . Court's own opinions"); *cf.* TEX. R. APP. P. 56.1(c) (as of September 1, 1997, a "petition refused" notation has the same meaning).

[30] *Faris*, 138 S.W.2d at 831.

[31] *See id.*

[32] *See id.*

[33] *Id.*

7

had "abandoned any right she might have [had] to claim any property" under George's will and "that it would be against the public policy of this State to allow a will to be probated some nineteen years after the death of the testator, especially when it is shown that the party having the right to probate the same had it in possession at such time."[34]

On appeal, Ellsworth pointed to the statutory language.[35] Ellsworth argued that "having offered his father's will for probate almost immediately upon his mother's death, and having no interest therein prior to such time," he—the party applying for probate—was not in default.[36] Without addressing Ellsworth's statutory argument head on, the court of appeals responded that the result of Sophia's "conclusive abandonment" of her right to probate George's will was that "she had no right, title, or interest in his estate to bequeath [to Ellsworth], except such as [had] accrued to her [through intestacy] in the absence of a will."[37] The court relied on a 1923 decision of the court of appeals, *Matt v. Ward*.[38] *Matt*, like *Faris*, did not analyze the statutory language.

---

[34] *Id.*

[35] *See id.* at 832.

[36] *Faris*, 138 S.W.2d at 832.

[37] *Id.*

[38] *Id.* (stating that Ellsworth's "rights [were] more appropriately controlled by" *Matt v. Ward*, 255 S.W. 794 (Tex. App.—Fort Worth 1923, writ ref'd)). Although we refused the application for writ of error in *Matt*, prior to 1927 that action did not give the court's opinion the precedential value of one of ours. *See The Greenbook*, *supra*, note 29.

The other courts that have addressed this issue have almost uniformly taken the position that a devisee's default is imputed to his or her own devisees and heirs, most following *Matt* or *Faris*.[39] Two have offered different analyses.

In *St. Mary's Orphan Asylum of Texas v. Masterson*, which preceded both *Faris* and *Matt*, the testator's devisees agreed not to probate his will and then sold land that was devised to them under the will to unrelated third parties.[40] Twenty-one years after the testator's death, the third-party purchasers learned of the will and applied to probate it in order to perfect their titles.[41] The court of appeals held that the devisees' default did not prevent the purchasers from probating the will.[42] The court recognized that "a purchaser from a devisee is a person entitled to have a will probated when the same constitutes an essential link in his title" and that this "right . . . is not dependent on the existence of the same right in their grantors, the devisees."[43] But then it pointed to the plain language of the statute—"[i]t is to be borne in mind that it is the applicant's 'default' that the statute has

---

[39] *See Abrams v. Ross' Estate*, 250 S.W. 1019, 1022 (Tex. Comm'n App. 1923) ("If any of the children of [the testator], the immediate legatees under said will, knew or by the exercise of ordinary care could have known of the existence thereof, he or she was in default. If any such legatee afterwards died, such default would bar his or her descendants from any right to have such will probated."); *Schindler v. Schindler*, 119 S.W.3d 923, 930 (Tex. App.—Dallas 2003, pet. denied) (after recognizing that Jodie, a devisee of the testator's will, was in default, holding that "Mary, as a devisee of Jodie, stands in no better position than Jodie" and was therefore in default herself (citing *Faris*, *Matt*, and *Brown v. Byrd*, 512 S.W.2d 758 (Tex. App.—Tyler, no writ))); *Brown*, 512 S.W.2d at 760–761 ("[I]f any devisee was in default, such default would bar his or her descendants from any right to have such will probated." (citing *Faris*, *Matt*, and *Abrams*)).

[40] 122 S.W. 587, 589 (Tex. App.—San Antonio 1909, writ ref'd).

[41] *See id.*

[42] *See id.* at 590.

[43] *Id.*

9

reference to"—and reasoned that the purchasers themselves were not in default.[44] "We think an applicant for the probate of [a] will must be judged by his own conduct and circumstances in determining whether or not he is in default", the court explained.[45]

More recently, the Seventh Court of Appeals rejected the *Faris* imputation rule outright.[46] The court stated that now-Section 256.003(a) "has repeatedly been interpreted as providing that the default of another does not preclude a non-defaulting applicant from offering a will for probate as a muniment of title", yet it cited only *Masterson* and another court of appeals decision involving an applicant who was a direct devisee of the testator.[47] The court attempted to distinguish *Faris* and similar decisions on their facts and then announced a new standard that has no basis in the statutory text: "[A] non-defaulting proponent [may] offer a will for probate more than four years after the death of the testator when intervening events would not work an injustice or frustrate the intent of the testator".[48]

That is the state of the caselaw before us: The only controlling authority from this Court, *Faris*, was not based on the statutory text. Of the remaining authorities on point, only *Masterson* was. Most court of appeals cases have followed *Faris* or applied the same rule. One has created a new rule in which courts must discern injustice and the testator's intent.

---

[44] *Id.*

[45] *Id.* at 591.

[46] *See In re Estate of Campbell*, 343 S.W.3d 899 (Tex. App.—Amarillo 2011, no pet.).

[47] *Id.* at 903 (citing *In re Estate of Williams*, 111 S.W.3d 259, 263 (Tex. App.—Texarkana 2003, no pet.); *Masterson*, 122 S.W. at 591).

[48] *Id.* at 906–908.

10

**B**

With that backdrop, we now decide whether Norman's default would bar Linda from probating Patricia's will in her individual capacity. Linda argues that imputing Norman's default to her would be at odds with the statutory text. The Butlers urge us to adhere to *Faris*. We believe that Linda has the better argument.

The statutory standard for permitting or disallowing probate of a will after the four-year mark is whether there is proof that "*the applicant* for the probate of the will was not in default".[49] There is no mention of potential default by anyone else. As we have said countless times, courts must "construe [a] statute's words according to their plain meaning"[50] because "changing the meaning of [a] statute by adding words to it . . . is a legislative function, not a judicial function."[51] Twenty years before refusing the writ in *Faris*, we explained:

> Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language, and not elsewhere. They are not the law-making body. They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.[52]

---

[49] § 256.003(a) (emphasis added).

[50] *State Office of Risk Mgmt. v. Martinez*, 539 S.W.3d 266, 270 (Tex. 2017).

[51] *City of Rockwall v. Hughes*, 246 S.W.3d 621, 631 (Tex. 2008).

[52] *Simmons v. Arnim*, 220 S.W. 66, 70 (Tex. 1920).

11

The *Masterson* court got it right.[53] We overrule *Faris v. Faris*[54] and disapprove of the cases that have affirmed *Faris'* imputation rule.[55]

But we also reject the test applied by the Seventh Court of Appeals that permits inquiry into whether permitting the late probate of a will would "work an injustice or frustrate the intent of the testator".[56] In many—if not most—cases, the equities will be unclear. This one is a perfect example. Linda alleges that between the time of Patricia's death in 2006 and Linda's application to probate Patricia's will in 2015, the Butlers "took absolutely no action to administer their mother's estate" but instead "lay in wait while assuming no responsibility" for any of the burdens associated with probate.[57] The Butlers charge that Linda is trying to "claw[]-back [their intestate] inheritance nine years after the fact"[58] and suggest that allowing their mother's property to pass to their stepfather's ex-wife would be *ipso facto* unjust. "Equity, like beauty, is often in the eye of the beholder."[59] The statutory text as written prevents litigation over the equities of a particular case and the inconsistent and unpredictable results that inevitably follow.

---

[53] *See* 122 S.W. 587, 590 (Tex. App.—San Antonio 1909, writ ref'd) ("It is to be borne in mind that it is the applicant's 'default' that the statute has reference to.").

[54] 138 S.W.2d 830 (Tex. App.—Dallas 1940, writ ref'd).

[55] *Schindler v. Schindler*, 119 S.W.3d 923, 930 (Tex. App.—Dallas 2003, pet. denied); *Brown v. Byrd*, 512 S.W.2d 758, 760–761 (Tex. App.—Tyler 1974, no writ); *Matt v. Ward*, 255 S.W. 794, 795 (Tex. App.—Fort Worth 1923, writ ref'd); *Abrams v. Ross' Estate*, 250 S.W. 1019, 1022 (Tex. Comm'n App. 1923).

[56] *In re Estate of Campbell*, 343 S.W.3d 899, 907–908 (Tex. App.—Amarillo 2011, no pet.).

[57] Pet'r Br. 25.

[58] Resp'ts Br. 23.

[59] *In re Ferguson*, No. 10-81401, 2011 WL 5910659, at *3 (Bankr. C.D. Ill.).

12

We hold that under Section 256.003(a), when an applicant seeks late-probate of a will in her individual capacity, only the applicant's conduct is relevant to determining whether she "was not in default".

## IV

Under the analysis we adopt today, if Linda had applied to probate Patricia's will in her individual capacity as Norman's devisee, rather than in her capacity as Norman's executor, Norman's default would be irrelevant to determining Linda's entitlement under Section 256.003(a) to probate Patricia's will more than four years after Patricia's death. But she did not, and we "cannot confer a capacity on [a] party that has not been pleaded."[60]

We can, however, "vacate the lower court[s'] judgment[s] and remand the case for further proceedings in light of changes in the law",[61] and because today we overrule *Faris v. Faris*, we choose to do so here.[62] Accordingly, we vacate the judgments of the lower courts and remand this case to the trial court to give Linda an opportunity to amend her pleadings to pursue probate of Patricia's will in her individual capacity.

Nathan L. Hecht
Chief Justice

Opinion delivered: April 12, 2019

---

[60] *Werner v. Colwell*, 909 S.W.2d 866, 870 (Tex. 1995).

[61] TEX. R. APP. P. 60.2(f).

[62] *See In re Jane Doe 2*, 19 S.W.3d 278, 283–284 (Tex. 2000) (vacating both lower courts' judgments and remanding for a new evidentiary hearing in the trial court in light of a decision clarifying the governing legal standards that had issued after the trial court hearing in the underlying case).

13