In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-21-00269-CV**

_____

**IN THE ESTATE OF CHARLENE BUTTS**

**On Appeal from the Probate Court No. 1**[1]
**Montgomery County, Texas**
**Trial Cause No. 20-40347-P**

**OPINION**

Appellant Tommy Lynn Cooper appeals the trial court's Judgment and Order Admitting Copy of Will to Probate as Muniment of Title wherein the trial court admitted a copy of his mother's will to probate as a muniment of title. Appellee Susan Bolster filed a cross appeal regarding the trial court's decision not to award her attorneys' fees. Finding no reversible error, we affirm the trial court's judgment.

---

[1] This case has been transferred from the former Montgomery County Court at Law No. 2 to the newly created Montgomery County Probate Court No. 1.

1

# I. Background

While decedent Charlene Butts was married to her first husband, she gave birth to Tommy, her only biological child.[2] Charlene divorced her first husband, and when Tommy was thirteen years old, Charlene married Billy Ray Butts, who had three children of his own, including Susan Butts Bolster, Appellee.[3] Charlene and Billy Ray remained married until Charlene died on March 26, 2008.

In April 2005, Charlene and Billy Ray executed wills with similar inheritance provisions. Each will bequeathed everything to the other, and named the other spouse as executor. Each will also named the four children and stepchildren as contingent beneficiaries, and named alternate executors; Charlene's will named Tommy and Susan, respectively, as alternate executors, and Billy Ray's will also named Susan and Tommy as alternate executors.

Neither Billy Ray nor either of the alternate executors took any steps to probate Charlene's will within four years after Charlene died. Eight months before Billy Ray died on May 25, 2018, he executed a transfer on death deed in favor of Susan. This deed had the effect of transferring Billy Ray's real property to Susan at the time of Billy Ray's death.

---

[2] For ease of reference, we identify the parties and their family members by their first names.

[3] Billy Ray also had two adopted children who are expressly excluded from inheriting under the terms of both Charlene's and Billy Ray's wills.

After Billy Ray's death, Susan probated his will. In 2020, Susan also filed a copy of Charlene's will for probate as a muniment of title, in the attempt to show that Billy Ray had inherited all of Charlene's real estate when Charlene died, and further that the real property identified in the transfer on death deed then passed to Susan after Billy Ray's death. Tommy contested Susan's attempt to probate Charlene's will, alleging that the copy of Charlene's Will could not be admitted to probate more than four years after Charlene's death, and that the lack of the original will was evidence of Charlene's revocation of her will during her lifetime. Tommy argued that Charlene had died intestate, and that he accordingly inherited Charlene's community half of the real estate in question. Tommy also sought partition of the land and the trial court severed the partition claim.[4]

The trial court granted interlocutory partial summary judgment in favor of Susan holding that Susan was not in default for failing to file the application to probate Charlene Butts' will as a muniment of title within four years of Charlene's death and granted a no-evidence summary judgment in favor of Susan on Tommy's claim to invalidate Billy Ray's transfer on death deed. The case was then submitted to the jury on a single issue: whether Charlene did or did not revoke her will.[5] The

---

[4] The partition claim is also on appeal as case no. 09-22-00045-CV, and we have entered a separate memorandum opinion on the partition.

[5] The jury question, instructions, and response are as follows:
Was the document identified as Exhibit A-1 not revoked by decedent?
 "Decedent" or "Testator" means Charlene Butts.

3

jury decided that Charlene did not revoke her will, and the trial court then entered a Judgment and Order Admitting Copy of Will to Probate as Muniment of Title.

We summarize the evidence before the trial court:

**A. Susan Bolster's Testimony**

Susan testified that her stepmother Charlene died at the age of seventy on March 26, 2008, in Montgomery County, Texas. At the time of Charlene's death, she had been married to Billy Ray for approximately thirty years. Susan identified the copy of Charlene's will admitted into evidence, and noted that the will named Susan's father, Billy Ray, as the executor. Charlene's will also names Tommy and Susan as alternate executors in the event that Billy Ray was unable or unwilling to serve in that capacity. Billy Ray died in 2018. When probating Billy Ray's will, Susan realized that the real property was in both Charlene's and Billy Ray's name,

---

"Contestant" means Tommy Cooper.

A person may revoke a will by destroying or canceling the will, or by causing it to be destroyed or canceled in her presence.

You are instructed that when the original will cannot be produced, and it is shown that when last seen it was in the possession of Testator or in a place to which she had ready access, it is presumed that she has destroyed it with intent to revoke it; however, no such presumption of revocation exists when the original will has been traced to the hands of another than the Testator in which case it is presumed the will has not been revoked unless the Contestant provides substantial evidence that the Testator revoked her will.

Answer "It was not revoked" or "It was revoked."

The answer "It was not revoked" must be based on a preponderance of the evidence. If you do not find that a preponderance of the evidence supports that answer, then answer "It was revoked."

Answer: IT WAS NOT REVOKED

4

and that Charlene's will therefore needed to be probated. Susan testified that when she found Charlene's and Billy Ray's wills after Billy Ray's death, she gave Billy Ray's will to her attorney so that it could be probated, and she gave Charlene's will to Tommy. When Tommy could not produce Charlene's original will, and denied having it, Susan and her attorney filed a copy of Charlene's will to be probated as a muniment of title.

Although Susan knew where the wills were kept, she did not look for them until after her father died. She testified that she gave no thought to probating Charlene's will or to the joint ownership of the property until that time.

## B. Tommy Cooper's Testimony

Tommy, Charlene's son, testified to the property that Charlene and Billy Ray owned at the time of Charlene's death. Tommy also recalled that Billy Ray worked as a mechanic, and Charlene was an accountant for HW Daily, Inc. for thirty-five years. In Tommy's opinion, Charlene's efforts and investment decisions were half responsible for the size of Billy Ray's estate, and she would have wanted Tommy to benefit from her efforts. Tommy did not know what happened to Charlene's original will and testified that Susan did not give it to him.

## C. Tamara Paul's Testimony

Tamara Paul is the attorney who prepared Charlene's and Billy Ray's wills in 2005. She described the usual procedure for drafting and signing a will, noting that

the witnesses to these wills were employees of her law firm, and that they knew what they were witnessing. Paul testified that Charlene signed her will voluntarily, appeared to be of sound mind at the time, and that the signing went according to the usual procedure. According to the custom of her office, Paul gave Charlene the original and one copy of the will.

### D. Vicki Hensarling's Testimony

Hensarling testified that she was Paul's paralegal and sister-in-law at the time Charlene signed her will. She confirmed Paul's testimony regarding the usual procedures involved in drafting and signing a will, and confirmed the exhibit as an accurate copy of Charlene's will.

### E. James Stilwell's Testimony

In an offer of proof, Stilwell, Susan's attorney, testified to the reasonable and necessary attorneys' fees incurred in representing Susan. The trial court, however, denied Susan's request for attorneys' fees to be awarded to her.

### F. Documentary Evidence

A copy of Charlene's will, dated April 21, 2005, was admitted into evidence, as were copies of the inventory of Billy Ray's estate, Susan's affidavit, and the transfer on death deed that Billy Ray executed on September 25, 2017.

## II. Issues Raised On Appeal

Tommy raises two issues on appeal. First Tommy argues Susan lacked standing. Second, Tommy contends the trial court erred in granting summary judgment for Susan.

## III. Standard of Review

Because standing is a component of subject matter jurisdiction, we review it de novo. *See Farmers Tex. Cty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020) (citations omitted). We also review the trial court's ruling on a summary judgment de novo. *See SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 641 (Tex. 2015) (citation omitted). Here, the motion for summary judgment was filed as a traditional motion for partial summary judgment. When filing a motion for summary judgment, the moving party has the burden to prove no genuine issue of material fact exists, and it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review the evidence in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See Mann Frankfort*, 289 S.W.3d at 848 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002)). When a movant provides evidence establishing its

7

entitlement to summary judgment, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

We review the denial of attorneys' fees under an abuse of discretion standard. *See Shayn v. City of Houston*, 499 S.W.3d 12, 15 (Tex. App.—Houston [14th Dist.] 2016, no pet.). A trial court abuses its discretion when it "acts without regard for any guiding rules." *Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 142 (Tex. 2016).

### IV. Analysis

#### A. Standing

The essence of Tommy's standing argument is that because Billy Ray survived Charlene by more than thirty days, Susan "had no interest under Charlene's will[,]" and therefore was not an "interested person" as defined in the Texas Estates Code. *See* Tex. Est. Code. Ann. § 22.018(1).[6] We disagree.

The Estates Code expressly permits an "interested person" to "file an application with the court for an order admitting a will to probate," and defines "interested person" as "an heir, devisee, . . . or any other [person] having a property right in or claim against an estate being administered[.]" Tex. Est. Code Ann. §§ 22.018(1), 256.051(a). Our Supreme Court has broadly interpreted the statutory

---

[6] Charlene's will provided that any beneficiary not surviving her by thirty days is deemed to have predeceased her.

definition of "interested person" to include any person "'possess[ing] a pecuniary interest to be benefitted and affected by the probate of the will and one which would . . . be[] materially impaired in the absence of its probate.'" *Ferreira v. Butler*, 575 S.W.3d 331, 334 (Tex. 2019) (quoting *Logan v. Thomason*, 202 S.W.2d 212, 215 (Tex. 1947). Under this definition of "interested person," Susan has a "pecuniary interest to be benefitted" by the probate of Charlene's will, and the probate of Charlene's will affects Susan's pecuniary interest in the real estate in question. We therefore hold that Susan has standing to apply to probate Charlene's will. We overrule Tommy's first appellate point.

## B. Summary Judgment

It is undisputed that neither Susan nor anyone else filed Charlene's will for probate within four years of Charlene's death in 2008. Despite this delay, Susan contended that she was not in default in applying to probate Charlene's will because she had no legal interest in Charlene's will until Billy Ray died in 2018. *See* Tex. Est. Code Ann. § 256.003(a). Susan moved for a traditional summary judgment relying on the holding in *Ferreira.* 575 S.W.3d at 337-38. In *Ferreira*, the Texas Supreme Court applied the standard of § 256.003(a) of the Estates Code to an untimely-filed application to probate a will as a muniment of title. The court held that if the *applicant* was not in default, then any other person's default was irrelevant, and the will could be admitted to probate. *Id.* at 338 (emphasis original); Tex. Est.

9

Code Ann. § 256.003(a). Because Susan applied to probate Charlene's will in her individual capacity, rather than as Billy Ray's executor, and because Susan acted within four years after Billy Ray's death, *Ferreira* dictates that Susan "was not in default in failing to present the will for probate on or before the fourth anniversary of [Charlene's] death." 575 S.W.3d at 334; Tex. Est. Code Ann. § 256.003(a).

Tommy argues that § 257.054 of the Estates Code governs the application as a muniment of title and that provision contains different language than 256.003(a), and there is a strict four-year limitation with no express exception for an applicant who is "not in default." Tommy also contends that this case is not governed by *Ferreira*.

We conclude that this case is governed by *Ferreira*. Like the instant case, *Ferreira* dealt with an applicant filing a will for probate as a muniment of title. In the intermediate court of appeals, the Houston Fourteenth Court found that the trial court properly granted the no evidence motion for summary judgment in favor of Patricia's children because the court of appeals followed, *Faris v. Faris*, 138 S.W.2d 830 (Tex. Civ. App.—Dallas 1940, writ ref'd), and Norman's fault in failing to probate Patricia's will was attributed to Linda, and Linda failed to present any summary judgment evidence raising a genuine issue of material fact that Norman was not in default in failing to probate Patricia's will within the four year limitations. See Ferreira v. Butler, 531 S.W.3d 337, 343-344 (Tex. App.--Houston [14th Dist.]

10

2017), vacated by 575 S.W.3d 331 (Tex. 2019). Notably, the court of appeals did not reach the question of whether the "not in default" exception language in Section 256.003(a) is available under Section 257.054. See 531 S.W.3d at 341, n. 3. The Texas Supreme Court expressly overruled *Faris*, and the Court reversed and remanded the case back to the trial court to give Linda an opportunity to amend her pleadings to pursue probate of Patricia's will in her individual capacity. In doing so, the Texas Supreme Court expressly construed the "not in default" language in Section 256.003(a). 575 S.W.3d at 333. The Texas Supreme Court held that under Section 256.003(a), "when an applicant seeks late-probate of a will in her individual capacity, only the applicant's conduct is relevant to determining whether she 'was not in default.'" *Id*. at 338.

Here, Susan, in her individual capacity, sought to probate Charlene's will as a muniment of title, and she did so as an interested person. Susan averred that she was not in default in reliance upon the reasoning in *Ferreira*. That is, Susan has pleaded that she is an interested person whose interest in the estate did not arise until the date of the death of Billy Ray. Her filing, therefore, was within the four-year limitation period.

Tommy argues that the "not in default" exception in Section 256.003(a) does not apply to a muniment of title probate under Section 257.054. He also argues that even if the "not in default" exception applies, *Ferreira* does not control because it is

11

factually distinguishable from this case, and the trial court erred in granting a summary judgment because there is a fact issue as to whether Susan was in default. Tommy contends Susan knew the location of Charlene's will, and the contents of the will stating Charlene left everything to Billy Ray, and Susan knew that Susan was named as a co-executor, and she failed to apply for probate within four years of Charlene's death. Susan argued she had no individual interest in Charlene's will until Billy Ray died because Charlene's will bequeathed everything to Billy Ray. And it was only after Billy Ray's death that Susan acquired an interest in the property conveyed to Billy Ray under Charlene's will.

The record established that Susan sought to probate Charlene's will within a reasonable time after Billy Ray died and after she became an "interested person" in Charlene's estate. *See* Tex. Est. Code Ann. §§ 22.018(1), 256.051(a). Under the rationale of *Ferreira,* Billy Ray's default cannot work against Susan to prevent her from submitting the will for probate within four years after Charlene's death. 575 S.W.3d at 338.

Tommy contends that 256.003(a) does not apply to the application to probate a will as a muniment of title. In order to probate a will as a muniment of title under 257.054, the applicant must first establish that there is a valid will. There are several ways to apply to probate a will, but they all begin with Section 256.003 of the Estates Code. *See* Tex. Est. Code Ann. § 256.003. Subsequent provisions of the Estates Code

deal with what the procedural types of probate or purposes thereof: Section 257, et seq., probates a will as a muniment only; Section 301, et seq., seeks the issuance of Letters Testamentary or of Administration for either an independent, or dependent, administration of the estate; and Section 501, et seq., seeks to have a will admitted to probate in an out-of-state court to be accepted by the Texas court for subsequent actions. *Id*. §§ 257.001-257.152; 301.001-310.006; 501.001-505.103.

We construe statutory language de novo. *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389 (Tex. 2014). Our goal is to determine and give effect to the Legislature's intent. *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 452 (Tex. 2012). We look to and rely on the plain meaning of a statute's words as expressing legislative intent unless a different meaning is supplied, is apparent from the context, or the plain meaning of the words leads to absurd or nonsensical results. *Crosstex Energy Servs., L.P.*, 430 S.W.3d at 389-90. We read words and phrases in a statute "in context and construed according to the rules of grammar and common usage." Tex. Gov't Code Ann. § 311.011. We construe the language of a statute so that each part has meaning and no part is left out. *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) ("The Court must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous."). We presume "the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." *TGS-*

13

*NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). A court must take a statute as it finds it, and it must refrain from rewriting the Legislature's chosen text. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009); *Pedernal Energy, LLC v. Bruington Eng'g, LTD.*, 536 S.W.3d 487, 491-92 (Tex. 2017).

The meaning of the word "will" in the Estates Code does not change from one provision to the others in the Estates Code and there is no intention by the Legislature to treat a will differently because it is admitted for the purposes of opening an independent or dependent administration as opposed to being admitted solely as a muniment of title. *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 501 (Tex. 2015) ("Determining legislative intent requires that we consider the statute as a whole, reading all its language in context, and not reading individual provisions in isolation."). We find it significant that *Ferreira* was a muniment of title case.[7] And, there the Texas Supreme Court construed Section 256.003(a) and the "not in default" exception and remanded the case to the trial court to allow the applicant to replead her case and establish her entitlement to probate Patricia's will as a muniment of title more than four years after Patricia's death.

---

[7] The Supreme Court in *Ferreria* did not directly state the "not in default" exception in section 256.003 applied to a will filed solely as a muniment of title under 257.054, but it applied the Section 256.003(a) exception in a muniment of title case. *Ferreira v. Butler*, 575 S.W.3d 331, 338 (Tex. 2019).

14

Some of the courts of appeals in recent years have acknowledged Section 256.003's "not in default" exception does not expressly appear in Section 257.054, but those courts either did not reach the issue and used only a Section 256.003 analysis, or generally found that Texas courts have been "liberal in permitting a will to be offered as a muniment of title after the four-year limitation period has expired."[8] See *Matter of Estate of Masters*, 659 S.W.3d 145 (Tex. App.—El Paso 2022, no pet.) (affirming denying admission of will because of default under 256.003); *In re Estate of Allen*, 407 S.W.3d 335 (Tex. App.—Eastland 2013, no pet.) (affirming applicant's admission of will under the exception in 256.003); *Castillo v. Castillo-Wall*, No. 03-21-00081-CV, 2022 WL 1434110 *1 (Tex. App.—Austin, May 6, 2022, no pet.) (mem. op.); *Ramirez v. Galvan*, No. 03-17-00101-CV, 2018 WL 454733, * 2 (Tex. App.—Austin Jan. 10, 2018, no pet.) (mem. op.) (citation omitted) ("Texas case law is quite liberal in permitting a will to be offered as a muniment of title after the four-year limitation period has expired."); *Estate of Simo*, No. 13-16-00211-CV, 2017 WL 4837767, at *3 (Tex. App.—Corpus Christi-Edinburg, Oct. 26, 2017, no pet.) (mem. op.). Based on the Texas Supreme Court's

---

[8] In the *Matter of Estate of Masters*, our sister court noted that each party on appeal treats the default exception in section 256.003 as applying to section 257.054, but explaining that "[w]hether the statute allows for an exception after four years for wills filed as a muniment of title has not been raised by the parties, and we assume, without deciding that the exception could apply." 659 S.W.3d 145, 151 n.3 (Tex. App.—El Paso 2022, no pet.).

decision in Ferreira and the overall structure of the Estates Code, we conclude that the language in Section 256.003(a) also applies to the admission of a will for probate as a muniment of title under Section 257.054.

Having found that the "not in default" exception of Section 256.003(a) applies to this matter, we must still address Tommy's argument that there was a genuine issue of material fact about whether Susan was "not in default." Our review of the motion for partial summary judgment is limited to the issues presented to the trial court in the motion for partial summary judgment. Tex. R. Civ. P. 166a(c). While the movant has the burden of showing there is no genuine issue of material fact, and it is entitled to judgment as a matter of law, when a movant provides evidence establishing its entitlement to summary judgment, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact. *See Walker*, 924 S.W.2d at 377.

Susan contends that the will was properly admitted as a muniment of title. The muniment of title statute provides that "[a] court may admit a will to probate as a muniment of title if the court is satisfied that the will should be admitted to probate and the court: (1) it is satisfied that the testator's estate does not owe any unpaid debt, other than any debt secured by a lien on real estate; or (2) finds for another reason that there is no necessity for administration of the estate." *See* Tex. Est. Code § 257.001. "Probating a will as a muniment of title provides a means to probate a

16

will quickly and cost-efficiently when there is no need for administration of the estate." *In re Estate of Jackson*, No. 14-16-00519-CV, 2017 WL 3611920, at *4 (Tex. App.—Houston [14th Dist.] Aug. 22, 2017, no pet.) (mem. op.); *Kuhr v. Smith*, Nos. 03-20-00416-CV, 03-20-00425-CV, 03-20-00583-CV, 03-21-00114-CV, 2022 WL 1289212, at *13 (Tex. App.—Austin Apr. 29, 2022) (no pet. (mem. op). Susan attached evidence to her second motion for partial summary judgment which consisted of Charlene's will, Billy Ray's Transfer on Death Deed, and an Affidavit by Susan setting forth testimonial facts to support her contention that she was not in default for failing to file Charlene's will sooner. Susan avers that she believed she had no interest in Charlene's real property because she left everything to Billy Ray. She stated she had no reason to probate Charlene's will during the time that Billy Ray was alive. Susan further swore that Billy Ray had an attorney prepare a Transfer on Death Deed the year before his death which, upon his death, conveyed an interest in what was previously Charlene's community property interest. In light of *Ferreira*, Susan has set forth sufficient evidence to support her claim that she is not in default in filing Charlene's will for probate.

In response, Tommy answered the second motion for partial summary judgment with the following evidence: Billy Ray's Transfer on Death Deed to Susan, Susan's Affidavit of Death of Billy Ray, and Tommy averred that Charlene sold her property so that she and Billy Ray could purchase their home, and eventually other

17

lots around it. Tommy stated that he had received a copy of the will but he never sought to probate Charlene's will. Tommy claimed that Billy Ray was diagnosed with dementia in late 2015 or 2016. He stated Susan moved in with Billy Ray in 2017 in order to care for him and make sure he took prescribed medicines. Tommy stated that he assumed he and Susan would get together after Billy Ray's death and divide up the properties. In sum, Tommy produced some of the same evidence in response to the second summary judgment that was produced by Susan and described both of their relationships to Billy Ray after Billy Ray's death. Tommy produced no deposition testimony, nor any other admissible documents, or testimony, to impeach Susan's contention that she had no reason to probate Charlene's will until after Billy Ray's death. Evidence does not create an issue of material fact if it is "'so weak as to do no more than create a mere surmise or suspicion'" that the fact exists. *See Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014)). Tommy's argument that his mother would not have wanted her interest in the property to go, ultimately, to Susan are mere speculation (Charlene's will states she wanted everything to go to Billy Ray) and have no bearing on Susan's failure to probate Charlene's will. His contentions do not raise a material fact issue as to whether Susan was in default for the delay in filing Charlene's will for probate until after Billy Ray's death. *See Kuhr,* 2022 WL 1289212, at *11 (applicant mistakenly believed that a probate had already been done); *In re Estate of Calvillo*,

No. 05-16-00661-CV, 2017 WL 462353, at *6-7 (Tex. App.—Dallas Jan. 26, 2017, no pet.) (mem. op.) (finding that proponent was not in default when she relied on attorney who failed to promptly tend to her legal matter; proponent was not bound by acts and omissions of her attorneys); and *see In re Estate of Jackson*, 2017, WL 3611920, at *4.

We overrule Tommy's second appellate issue.

**C. Attorneys' Fees**

In her cross-appeal, Susan claims that the trial court erred in excluding evidence of her attorneys' fees and in declining to grant her request to be awarded her attorneys' fees under the Uniform Declaratory Judgment Act (UDJA). *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009. We review an award or denial of attorney's fees under the Declaratory Judgments Act for an abuse of discretion. *See Preston State Bank v. Willis*, 443 S.W.3d 428, 434 (Tex. App.—Dallas 2014, pet. denied) (citation omitted). The trial court has broad discretion in determining whether to award attorney's fees in a declaratory judgment action, and we will not reverse a trial court's decision absent a clear showing of an abuse of discretion. *See Oake v. Collin Cty.*, 692 S.W.2d 454, 455 (Tex. 1985) (citations omitted).

Although Susan prevailed in the trial court, and prevails in this court, she was not entitled to attorneys' fees as a matter of law. *See Mahmood v. Fanasch*, No. 09-

19

05-134-CV, 2005 Tex. App. LEXIS 9632, at *8 (Tex. App.—Beaumont Nov. 17, 2005, no pet.) (mem. op.). Instead, under the declaratory judgment statute an attorneys' fee award is committed to the trial court's sound discretion. *Id.* More specifically, the section provides that "the court *may* award costs and reasonable and necessary attorney's fees as are equitable and just." (Emphasis added) Tex. Civ. Prac. & Rem. Code Ann. § 37.009. A court may determine that even fees shown to be reasonable and necessary should not be awarded if such an award would not be equitable and just. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *Kings River Trail Ass'n, Inc. v. Pinehurst Trail Holdings, L.L.C.*, 447 S.W.3d 439, 451-52 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (citations omitted). Based on this record, we cannot say the trial court committed a clear abuse of discretion in denying Susan an award of her attorneys' fees.

We overrule Susan's sole point in her cross-appeal.

## V. Conclusion

Susan was a person interested in Charlene's estate, and we conclude that the trial court did not err in granting a summary judgment regarding Susan's timely application to probate a copy of Charlene's will as a muniment of title. We also conclude that Susan has shown no entitlement to attorneys' fees. Accordingly, we affirm the trial court's judgment.

20

AFFIRMED.

JAY WRIGHT
Justice

Submitted on March 3, 2023
Opinion Delivered December 14, 2023

Before Golemon, C.J., Johnson and Wright, JJ.